490 A.2d 918

**Linda EICHENLAUB**

**v.**

**Daniel W. EICHENLAUB, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1984.

Filed April 4, 1985.

Arnold H. Cantor, Pittsburgh, for appellant.

Lee Markovitz, Pittsburgh, for appellee.

Before SPAETH, President Judge, and BROSKY and OLSZEWSKI, JJ.

SPAETH, President Judge:

This is an appeal from judgment of sentence for indirect criminal contempt of a protection order entered under the Protection From Abuse Act.[1] The issue is whether the provision of the Act that on a charge of indirect criminal contempt "the defendant shall not have a right to a jury trial," 35 Pa.C.S. § 10190, violates appellant's rights under the United States and Pennsylvania Constitutions. We hold that it does not and therefore affirm.

Appellant married appellee on October 5, 1968. The couple had three children. On May 10, 1979, appellee filed a petition for a protection order under the Protection From Abuse Act, *supra*, alleging that appellant had abused her and the children. (R. at 1)[2] On May 17, 1979, the trial court ordered that appellant be excluded from the marital home for thirty days and that he refrain from abusing appellee and the children. (R. at 3) On January 18, 1982, appellee filed a second petition for a protection order, alleging that appellant had assaulted her and threatened her life. (R. at 4). After hearing, the trial court, on February 17, 1982, ordered that appellant be excluded from

1. Act of Oct. 7, 1976, P.L. 1090, No. 218 § 1, as amended, Act of June 23, 1978, P.L. 513, No. 81, § 1, 35 Pa.S. §§ 10181–90.

2. The record transmitted to us does not contain all the documents to which the trial court refers in its opinion. When the documents do not appear in the record, we rely, in the ensuing statement of facts upon the trial court's opinion.

the marital home for one year and that he refrain from abusing appellee and the children. (R. at 8)

On June 23, 1982, appellee filed the first of four allegations that appellant was in contempt of the trial court's second protection order. Appellee alleged that appellant had returned to the marital residence and again assaulted her. (R. at 11) After hearing, at which appellant pleaded guilty, the trial court sentenced him to 90 days probation and a $250 fine. (Slip op. of tr. ct. at 3) On August 4, 1982, appellee filed her second contempt allegation, alleging that appellant had threatened her life. (R. at 13) In lieu of a hearing, the parties, on September 1, 1982, agreed to a consent order by the terms of which appellant agreed that he would not return to the marital home for any reason, and that he would undergo psychiatric counseling, the results of which he would report to the court within 90 days. (R. at 15) Appellee apparently filed her third contempt allegation the following month, with appellant filing a cross allegation. The trial court dismissed both allegations, admonishing the parties to comply strictly with the terms of the September 1, 1982, consent order. (Slip op. of tr. ct. at 3–4) On April 2, 1983, appellee filed her fourth contempt allegation; it arose from an incident earlier that day. According to appellee's testimony at the contempt hearing, on April 14, 1983, appellant waited in the driveway of the marital residence for her to return from work. When she returned, at 3:00 a.m., he beat her. She sustained two black eyes, bruises to her face, and a fractured sternum. Her injuries required hospitalization for six days, during which time appellant continued to threaten her. (N.T., 4/14/83 at 38–48)

The issue before us arises because at the start of the hearing on appellee's fourth contempt allegation, the trial court denied appellant's motion for trial by jury. (R. at 18, N.T. 4/14/83 at 12) At the conclusion of the hearing, the court found appellant guilty of indirect criminal contempt, and sentenced him to ninety days in the county jail. This appeal followed.

Section 10190 of the Protection from Abuse Act provides:

(a) Upon violation of a protection order or a court approved consent agreement the court may hold the defendant in indirect criminal contempt and punish him in accordance with law.

(b) Notwithstanding any provision of the law to the contrary any sentence for this contempt may include imprisonment up·to six months or a fine not to exceed $1,000 or both and the defendant shall not have a right to a jury trial on such a charge.

35 P.S. § 10190.

While the Act has been upheld in the face of other constitutional challenges, *see Commonwealth v. Allen*, 506 Pa. 500, 486 A.2d 363 (1984); *Commonwealth v. Zerphy*, 332 Pa.Super. 388, 481 A.2d 670 (1984) (double jeopardy); *Boyle v. Boyle*, 12 D. & C. 3d 767 (1979) (due process), this case is the first challenge to the Act's denial of a right to a jury trial on a charge of indirect criminal contempt. *See*, on the enhanced penalties added to the Act in 1978, Comment, "Spouse Abuse: A Novel Remedy for a[n] Historic Problem," 84 *Dickinson L.Rev.* 147, 163–64 (1980).

■ We begin by noting that Section 10190, as is true of any other statutory provision, enjoys a strong presumption of constitutionality. *See* 1 Pa.C.S. § 1922(3); *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 155, 425 A.2d 419, 421 (1981) ("... we must be mindful of the presumption in favor of constitutionality of lawfully-enacted legislation ... [A]n act of assembly will not be declared unconstitutional unless it clearly, palpably and plainly violates the constitution. (citations omitted) Any doubts are to be resolved in favor of sustaining the legislation."). *See also In re Jones*, 286 Pa.Super. 574, 429 A.2d 671 (1981). As will appear, we have concluded that Section 10190 does not "clearly, palpably and plainly" violate appellant's right to a jury trial. Accordingly, we will not declare the section unconstitutional.

■ In *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, *reh'g denied* 392 U.S. 947, 88 S.Ct. 2270, 20 L.Ed.2d 1412 (1968), the United States Supreme Court held that one accused of a "serious," as opposed to a "petty,"

offense is entitled to a jury trial. The Court observed that "the boundaries of the petty offense category have always been ill-defined, if not ambulatory," and that "the definitional task necessarily falls upon the courts, which must ... pass upon the validity of legislative attempts to identify those petty offenses which are exempt from jury trial...." *Id.* at 160, 88 S.Ct. at 1453. The "most relevant indication ... is the severity of the penalty authorized for its commission." *Frank v. United States,* 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162, *reh'g denied* 396 U.S. 869, 90 S.Ct. 34, 24 L.Ed.2d 123 (1969). The Court emphasized that it is the penalty authorized, not the penalty actually imposed, that controls. *Id.* at 149, 89 S.Ct. at 1505 ("... the severity of the penalty authorized, not the penalty actually imposed, is the relevant criterion," for "[i]n such cases, the legislature has included within the definition of the crime itself a judgment about the seriousness of the offense."). In defining when the penalty authorized is so severe as to require a jury trial, the Court has drawn a "bright line": the right to trial by jury attaches when one is accused of a crime for which the authorized penalty is more than six months imprisonment. *See Baldwin v. New York,* 399 U.S. 66, 68–74, 90 S.Ct. 1886, 1887–1891, 26 L.Ed.2d 437 (1970); *Frank v. United States, supra* 395 U.S. at 150, 89 S.Ct. at 1506. This rule extends to the offense of criminal contempt. *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974) (court may not impose penalty of more than six months imprisonment for separate instances of criminal contempt arising out of same incident without affording accused right to trial by jury): *And see Commonwealth v. Mayberry,* 459 Pa. 91, 98, 327 A.2d 86 (1974) (on issue "whether the crime charged, criminal contempt or otherwise, is 'serious' [,] [t]he test is clear," the United States Supreme Court having established six months imprisonment as the "[f]ixed dividing line") (citations omitted).

Since Section 10190 of the Protection From Abuse Act does *not* authorize a penalty of more than six months imprisonment, it does not violate appellant's right to a jury

trial, *unless* the *further* authorization of "a fine not to exceed $1,000" so enhances the severity of the penalty authorized as to render the offense of violating a protection order a "serious," instead of a "petty," offense. Appellant argues that the further authorization of a $1,000 fine does render the offense "serious," and in support of his argument, he cites the federal definition of a "petty" offense in 18 U.S.C. § 1(3) ("Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense") and decisions by federal circuit Courts of Appeal adopting this definition as the bright line determining when the right to trial by jury attaches.[3] We are not persuaded by appellant's argument, or by his citations in support of it.

■ Our legislature has not enacted a statutory definition drawing a bright line between petty and serious offenses. A summary offense is one punishable by ninety days imprisonment, or a $300 fine, or both. *See* 18 Pa.C.S. §§ 106(c)(2); 1101(6). This definition, however, is irrelevant to the determination of an accused's right to a jury trial, for an offense may be more "serious" than a summary offense without being so "serious" as to require a jury trial. *See Codispoti v. Pennsylvania, supra; Commonwealth v. Mayberry, supra.* If we may not consider our legislature's statutory

---

**3.** At least two Courts of Appeal have adopted the definition of petty offense in 18 U.S.C. § 1(3) as to fine as well as imprisonment as the bright line that divides offenses that entitle an accused to a jury trial from those that do not. *See United States v. McAlister,* 630 F.2d 772 (10th Cir.1980); *United States v. Hamdan,* 552 F.2d 276 (9th Cir.1977). Two other Courts of Appeal, following the flexible approach prescribed by *Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975), discussed *infra,* treat the statutory definition as an important but not decisive factor to be considered when deciding whether a jury trial is required. *See Girard v. Goins,* 575 F.2d 160 (8th Cir.1978); *Douglass v. First National Realty Corp.,* 543 F.2d 894 (D.C.Cir.1976). In *Richmond Black Police Officers Ass'n v. Richmond,* 548 F.2d 123 (4th Cir.1977), the issue was not decided, for the offense in that case had no statutorily defined maximum penalty and the fines actually imposed, $250 upon each individual contemnor, were below the federal limit. In *dictum,* the court miscited *Muniz* as supporting the proposition that " 'serious contempt' occurs where the imprisonment exceeds or can exceed six months or, generally, where the fine exceeds $500." *Id.* at 127.

definition of a petty offense dispositive, we see no reason why we should consider the federal definition dispositive, especially given the fact that the federal definition was adopted in 1930 for purposes unrelated to the right to a jury trial. *See Duke v. United States,* 301 U.S. 492, 494, 57 S.Ct. 835, 836, 81 L.Ed. 1243 (1937) ("The evident object of [§ 1(3)] was to bring about a subdivision of misdemeanors of minor gravity to be known as petty offenses.") To be sure, if the United States Supreme Court had adopted the federal definition as dispositive, we should be obliged to do the same. However, the Court has instead cautioned that we are not to adopt so rigid an approach.

■ In *Muniz v. Hoffman,* 422 U.S. 454, 474, 95 S.Ct. 2178, 2189, 45 L.Ed.2d 319 (1975), the Court held that in determining when a fine will, in and of itself, determine an accused's right to a jury trial, we are not to accord "talismanic significance" to the definition of petty offenses in 18 U.S.C. § 1(3). The question in *Muniz* was whether a fine of $10,000 imposed upon a labor union for criminal contempt entitled the union to a jury trial. The Court held that it did not, and in doing so, distinguished between the weight to be accorded, in determining the "seriousness" of an offense, to imprisonment as compared with a fine:

> ... we cannot accept the proposition that a contempt must be considered a serious crime under all circumstances where the punishment is a fine of more than $500, unaccompanied by imprisonment. It is one thing to hold that deprivation of an individual's liberty beyond a six-month term should not be imposed without the protections of a jury trial, but it is quite another to suggest, that regardless of the circumstances, a jury is required where any fine greater than $500 is contemplated. From the standpoint of determining the seriousness of the risk and the extent of the possible deprivation faced by a contemnor, imprisonment and fines are intrinsically different. It is not difficult to grasp the proposition that six months in jail is a serious matter for any individual, but it is not tenable to argue that the possibility of a $501 fine

would be considered a serious risk to a large corporation or labor union.

422 U.S. at 477, 95 S.Ct. at 2190–2191.

We conclude from this statement that in determining the seriousness of an offense, we are not to be governed by the amount of the fine. While we must of course consider that amount, we are to do so in the context of all of the circumstances, including the nature of the risk the legislature sought to meet and the possible impact of the fine on the accused. *See also Frank v. United States, supra,* 395 U.S. at 151, 89 S.Ct. at 1506 (sentence of three years probation for criminal contempt did not entitle defendant to jury trial, as probation, while "a significant infringement of personal freedom, ... is certainly less onerous a restraint than jail itself") Applying *Muniz* to the fine at issue here, we hold that the maximum authorized fine of $1,000 does not render the offense defined in 35 Pa.C.S. § 10190 a "serious" one.

■ There can be no question regarding the nature of the risk the legislature sought to meet in enacting the Protection From Abuse Act, of which 35 Pa.S. § 10190 is an integral part. We have described the Act as a "vanguard measure dealing with the problems of wife and child abuse." *Cipolla v. Cipolla,* 264 Pa.Super. 53, 55 n. 1, 398 A.2d 1053, 1054 n. 1 (1979). The legislature recognized that existing legal means were inadequate to address these problems. *See* D. Flynn, "Domestic Relations—The Protection From Abuse Act—Pa.Stat.Ann. tit. 35, §§ 10181–10190 (Purdon Supp.1977)," 51 *Temple L.Q.* 116, 116–20 (1978); Comment, "Spouse Abuse," *supra,* at 153–58; Note, "Relief for Victims of Intra-Family Assaults: The Pennsylvania Protection From Abuse Act," 81 *Dickinson L.Rev.* 815 (1977). The primary goal of the Act was therefore not retrospective punishment, but rather "[a]dvance prevention of physical and sexual abuse." *Commonwealth v. Allen, supra* 506 Pa. 500, 486 A.2d 363. This purpose is manifest in the emergency provisions of the Act that enable a court to respond quickly and flexibly to advance warnings of

abuse. *See, e.g.,* 35 Pa.C.S. §§ 10184–86 (upon *ex parte* application of victim, court may order spouse immediately excluded from marital home, with hearing to be held within 10 days); § 10188 (during weekend, District Justice may grant any emergency relief authorized by Act). The provision of 35 P.S. § 10190, denying a jury trial to violators of the Act's protection orders, in such an emergency provision. As the trial court emphasized:

> The emergency nature of the judicial process pursuant to the Protection From Abuse Act requires that this Court act swiftly to prevent continued abuse and deal with contempt situations in an expeditious manner lest the violation giving rise to the contempt become a criminal action for homicide. Faced with life and death situations, this Court must utilize its expertise in such matters to enforce its orders without the time delay involved in a jury trial. To afford a jury trial in all instances of indirect criminal contempt for violation of a Protection From Abuse Act order would, in essence, wipe out the legislatively created remedy and enforcement under said Act.

Slip op. of tr. ct. at 11.

*See also State v. Tenriero,* 183 N.J.Super. 519, 444 A.2d 623, 626 (1981) (Applying all circumstances test of *Muniz,* court holds that maximum authorized penalty of six months' imprisonment or $10,000 fine or both for gambling offenses did not require jury trial where penalty was devised by legislature specifically to counter "the unique nature of this type of activity").

We recognize that the fine at issue here is to be imposed upon an individual, rather than, as in *Muniz,* a labor union, and that therefore its impact is correspondingly more severe—a factor that several courts have considered significant. *See United States v. McAlister,* 630 F.2d 772 (10th Cir.1980) (maximum fine of $1,000 for offense of trespass entitled trespasser upon nuclear plant site to jury trial); *Girard v. Goins,* 575 F.2d 160 (8th Cir.1978) (fines of $2,500 to $10,000 imposed upon individual contemnors entitled

them to jury trial); *United States v. Hamdan*, 552 F.2d 276 (9th Cir.1977) (maximum fine of $1,000 entitled individuals accused of falsifying statements to Immigration and Naturalization Service to jury trial); *Douglass v. First National Realty Corp.*, 543 F.2d 894 (D.C.Cir.1976) (fine of $5,000 may not be imposed upon individual contemnor absent jury trial; court therefore reduces fine to $500). Against this, however, should be set the fact that when the offender is indigent and "through no fault of his own, ... cannot pay the fine," a court may not constitutionally incarcerate him unless "alternate measures are not adequate to meet the State's interests...." *Bearden v. Georgia*, 461 U.S. 660, 672, 103 S.Ct. 2064, 2073, 76 L.Ed.2d 221 (1983). *See also Commonwealth ex rel. Benedict v. Cliff*, 451 Pa. 427, 433, 304 A.2d 158, 161 (1973) ("[A] state is prohibited from committing its citizens for fines without a reasonable opportunity being afforded to allow them to meet the court's directive consistent with their respective financial situations."). No doubt, at some level a fine would become so severe as to entitle the accused to a jury trial. Here, however, were the maximum authorized fine $500 instead of $1,000, no question of constitutionality would arise. *See, e.g., Baldwin v. New York, supra* 399 U.S. at 70–71, 90 S.Ct. at 1888–1889 (maximum authorized penalty of $500, six months imprisonment or both, imposed without jury trial, cited as example of constitutionally permissible penalty); *United States v. Hamdan, supra* (authorized maximum penalty of $500 as well as six months imprisonment would be constitutional); *Douglass v. First National Realty Corporation, supra* (court reduces $5,000 fine imposed without jury trial to constitutional level of $500.) Given the fact that summary disposition is essential to the effectiveness of the Protection From Abuse Act, we do not believe that by authorizing a fine of $1,000, the legislature improperly denied appellant his right to a jury trial. Clearly, the right is not unqualified, which is to say, it need not be provided in every case. In not providing it here, the legislature did not, in our view, "clearly, palpably and plainly"

violate the Constitution either of the United States or of Pennsylvania.

Affirmed.