526 A.2d 429

**Linda A. YANKOSKIE, Appellant,**

v.

**Samuel Marlin LENKER, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 12, 1987.

Filed May 28, 1987.

Carol J. Coyne and Joseph R. DeCristopher, Susquehanna Legal Services, Sunbury, for appellant.

Before BECK, HESTER and ROBERTS, JJ.

BECK, Judge:

This is an appeal from an order of the Court of Common Pleas of Northumberland County denying appellant's petition for relief under the Protection From Abuse Act, Pa. Stat.Ann. tit. 35, §§ 10181–10190 (Purdon 1977 & Supp. 1986). Finding that relief was improperly denied, we reverse.

Appellant Linda A. Yankoskie seeks court protection from Samuel Marlin Lenker, her former boyfriend. During the early 1980's, appellant and Mr. Lenker shared a residence on Main Street, in Sunbury, Pennsylvania. They cohabited for an extended period of time. In March, 1983, appellant moved to an apartment on Pennsylvania Avenue where she currently resides. This apartment is leased exclusively to the appellant. Mr. Lenker maintains his own separate residence.

In the years which followed, appellant's new home became the focus of Mr. Lenker's family life. The parties had three children together who were raised in the apartment: Samuel Lee Lenker, born September 30, 1983, Sandra Lynn Lenker, born February 14, 1985, and Aaron Marlin Lenker, born May 16, 1986. Mr. Lenker visited appellant and the children with increasing frequency. On the occasion of each visit, he was admitted to the apartment with appellant's consent.

On June 16, 1986, appellant filed a Petition for Protection from Abuse, and a hearing was held within ten days as mandated by the Abuse Act. Pa.Stat.Ann. tit. 35, § 10185(a). Appellant testified that while in the apartment with her permission Mr. Lenker had become intoxicated and had attempted to assault her. She also testified that Mr. Lenker had broken his infant son Aaron's leg and had shoved his young son Samuel's face against a cellar door.

Mr. Lenker did not appear at the hearing or otherwise contest these allegations.

At the conclusion of the hearing, the Honorable James J. Rosini orally denied appellant's petition. Appellant filed posttrial motions as required by Pa.R.Civ.P. 1905(b). These motions were denied. The judge issued a memorandum decision which stated that there was "... no doubt in the Court's mind that the acts alleged and testified to constitute sufficient conduct to grant an order if in fact the Abuse Act applies." The court found, however, that it lacked authority under the Abuse Act to grant an order designed to safeguard appellant from Mr. Lenker. We disagree.

█ Section 10186(a) of the Abuse Act empowers the Court of Common Pleas to:

> ... grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children, which may include:
> (1) Directing the defendant to refrain from abusing the plaintiff or minor children.

Section 10182 provides:

> "Abuse" means the occurrence of one or more of the following acts between family or household members who reside together; or who formerly resided together and both parties continue to have legal access to the residence:
> (i) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury or serious bodily injury with or without a deadly weapon.
> (ii) Placing by physical menace another in fear of imminent serious bodily injury.
> (iii) Sexually abusing minor children as defined pursuant to the act of November 26, 1975 (P.L. 438, No. 124), known as the "Child Protective Services Law."[1]
> ....

[1] 11 P.S. § 2201 et seq.

Section 10185(a) further provides that "... the plaintiff must prove the allegation of abuse by a preponderance of

the evidence." Thus, in order to obtain a protective order, a plaintiff must show: (1) that the defendant has engaged in misconduct as specified by section 10182(i), (ii) or (iii); (2) that the defendant and the victims were "family or household members"; and (3) that the defendant satisfies the Act's residency requirement.

## I.

The first of these three conditions is not here at issue. Appellant presented uncontradicted testimony that Mr. Lenker attempted to cause her bodily injury and knowingly caused her sons bodily injury within the meaning of section 10182(i). The trial judge did not question appellant's credibility.

## II.

The second condition for an order has also been satisfied. Section 10182 specifies that:

"Family or household members" means spouses, persons living as spouses, parents and children, or other persons related by consanguinity or affinity.

Mr. Lenker, Ms. Yankoskie, Aaron Lenker, and Samuel Lenker are clearly "parents and children." Moreover, we believe that Mr. Lenker and Ms. Yankoskie independently qualify as "persons living as spouses".

As the General Assembly recognized, the problem of domestic violence is not confined to married couples who reside together in conventional living arrangements. In order to evaluate whether two unmarried persons are "living as spouses", a court should consider the full range of circumstances in the particular case before it. The fact that a defendant maintains a residence apart from where the plaintiff lives is not dispositive; otherwise a defendant could place himself beyond the reach of the Act merely by temporarily renting an apartment or by moving in with a relative. Other relevant factors include: (1) the duration of the relationship between the parties; (2) the frequency of contact between the parties; (3) whether the parties are

financially interdependent; (4) whether the parties have had children together or have helped raise children together; (5) whether the parties have engaged in tasks directed toward maintaining a common household.

In the case sub judice, appellant bore the defendant three children in three years. She testified that the defendant visited her apartment nearly every day and evening. Significantly, she also testified that the defendant was sterilizing baby bottles for his son Aaron at the time he attacked the infant. The defendant presented no testimony. Under these circumstances, we find that appellant and the defendant were "living as spouses" and are therefore "family or household members" under the Abuse Act.

### III.

The remaining question concerns appellee Lenker's residency. The Act as originally passed in 1976 described abuse as "acts between family or household members who reside together." In 1978, the legislature passed an amendment adding the language "or who formerly resided together and both parties continue to have legal access to the residence."

Ms. Yankoskie contends on appeal that she and Mr. Lenker "reside together" within the meaning of the statute. This argument is bolstered by some of the same considerations which led us to conclude that the parties were "living as spouses". However, since appellant did not raise this issue in her posttrial motions, the question has been waived. *See Commercial Credit Corp. v. Cacciatiore,* 343 Pa.Super. 430, 495 A.2d 540 (1985). *See generally Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

Ms. Yankoskie also contends that she and Mr. Lenker formerly resided together and that both parties continue to have legal access to her residence.[1] The "legal access" to

---

1. We do not construe the Act so narrowly as to require that a defendant continue to have legal access to the *very same* residence in which he previously resided with the plaintiff. It is enough that the parties formerly resided together in one location and that the defend-

which she refers is the permission that she gave appellee to enter her apartment on the days when he tried to attack her and the children. We agree that permissive entry is a form of "legal access" under the Abuse Act.

No appellate court has previously construed the term "legal access" in this context. The Act itself contains no definition of the phrase.[2] Nor can the term be said to have a uniform common and approved usage or a single plain and unambiguous meaning. *See* 1 Pa.Cons.Stat.Ann. §§ 1903(a), 1921(b) (Purdon Supp.1986) (Statutory Construction Act). Here we must be guided by the general principle that "... provisions of a statute shall be liberally construed to effect their objects and promote justice." 1 Pa.Cons. Stat.Ann. § 1928(c).[3]

This court has repeatedly characterized the Act as a "vanguard measure dealing with the problems of wife and child abuse." *In re Penny R.,* 353 Pa.Super. 70, 73, 509 A.2d 338, 340 (1986); *Eichenlaub v. Eichenlaub,* 340 Pa.Super. 552, 560, 490 A.2d 918, 922 (1985); *Cipolla v. Cipolla,* 264 Pa.Super. 53, 55 n. 1, 398 A.2d 1053, 1054 n. 1 (1979). The goal of the Act is to provide immediate protection from the threat of physical violence. *See Rosenberg v. Rosenberg,* 350 Pa.Super. 268, 270 n. 1, 504 A.2d 350, 351 n. 1 (1986). The Act was also designed to compensate for the deficiencies of the criminal justice system in handling domestic abuse matters. Police are often reluctant to intervene in intra-family disputes. *See* Comment, *Ex Parte Protection Orders: Is Due Process Locked Out?,* 58 Temp. L.Q. 843, 845 (1985). Prosecutors will often decline to press charges where the defendant is accused of beating someone

ant had legal access to the residence in which the plaintiff lived at the time the abusive acts occurred.

**2.** Section 10182 provides that "[t]erms not otherwise defined by this act shall have the meaning given to them by the Crimes Code." The Crimes Code does not define "legal access". Yet, we note that the Crimes Code describes "criminal trespass"—an antithetical concept— in such a way as to exclude the act of entering onto property with the owner's permission. 18 Pa.Cons.Stat.Ann. § 3503 (Purdon 1983).

**3.** The eight enumerated exceptions to this principle are not here applicable. 1 Pa.Cons.Stat.Ann. § 1928(b).

with whom he has had a close relationship. *See* Note *Domestic Relations—The Protection From Abuse Act,* 51 Temp.L.Q. 116, 119 (1978). As the Pennsylvania Supreme Court noted in *Commonwealth v. Allen,* 506 Pa. 500, 509, 486 A.2d 363, 367 (1984), *cert. denied,* 842 U.S. 474, 106 S.Ct. 128, 88 L.Ed.2d 105 (1985), "... domestic violence and spousal and child abuse are serious and widespread societal problems which are effectively beyond reach, absent such legislation."

The setting in which the Act most clearly applies is where the defendant may claim an affirmative legal right to enter the plaintiff's residence. This situation will arise, for example, where the defendant has an ownership interest in the residence or where the plaintiff and the defendant are co-tenants. In such cases, a court may enter a protective order evicting the defendant from the premises. *See* § 10186(a)(2).

The Act, however, requires only "legal access to the residence"—not a legal right to the residence. In light of the statute's overall remedial purpose, we find that the term "legal access" is sufficiently broad to allow the courts to protect a plaintiff who voluntarily gave the defendant access to her home. Such a plaintiff would significantly benefit from a court order simply "[d]irecting the defendant to refrain from abusing the plaintiff or minor children." § 10186(a)(1). A court order would tend to deter future acts of violence. If the defendant persists in harassing the plaintiff he could be held in contempt for violating the order. *See* § 10190. Perhaps most importantly, a court determination that the defendant is in fact an abuser would increase the likelihood that law enforcement officials will take special efforts to protect the victim and will treat the defendant's acts as serious crimes.[4]

---

**4.** Enlisting the cooperation of law enforcement personnel is particularly important to a plaintiff who has been assaulted after inviting the defendant into her home. Many officers may tend to view such a plaintiff as partially responsible for her own victimization. They may also believe that she would be likely to drop charges against the defendant and to attempt a reconciliation.

■ We hold that the term "legal access" means access as of right or access by permission. In other words, "legal access" includes any access to plaintiff's residence which the defendant obtained, or could have obtained, by a means which is legal—i.e. not in violation of the criminal law. In the instant case, Mr. Lenker had legal access to Ms. Yankoskie's apartment since he entered the premises with her consent on the days when he attacked her and the children.

Judgment is reversed and remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

HESTER, J., concurs in the result.