Clarence and Phyllis FIEGEN, Leroy and Shirley Kasma, Clarence and Anna Marie Frost, Norwin and Peggy Bittner, James and Sandra Terveen, Phillip and Audrey Olson, and Ed Zylstra, Plaintiffs and Appellants,

v.

NORTH STAR, LTD., a corporation, Les Hawkey, and Les Hawkey d/b/a P & S, Inc., Dixie Hawkey, William Ezell, Charles A. Schindler, and Charles Stintson, Defendants and Appellees.

No. 17054.

Supreme Court of South Dakota.

Argued Feb. 12, 1991.

Decided March 27, 1991.

Thomas L. Fiegen, Cedar Rapids, Iowa, for plaintiffs and appellants.

Thomas K. Wilka of Hagen and Wilka, Sioux Falls, for defendants and appellees North Star, Ltd., Les Hawkey and Dixie Hawkey.

Charles A. Schindler, Lenexa, Kan., pro se.

HERTZ, Acting Justice.

Clarence and Phyllis Fiegen, Leroy and Shirley Kasma, Clarence and Anna Marie Frost, Norwin and Peggy Bittner, James and Sandra Terveen, Phillip and Audrey Olson, and Ed Zylstra (collectively referred to as producers) bring this intermediate appeal from an order of the trial court denying their motion, brought pursuant to

SDCL 21–1–4.1 (the statute), to allow discovery relating to punitive damages. We reverse and remand.

## FACTS

In October 1986, producers brought an action for consequential and punitive damages for breach of contract, common law deceit and fraud, obtaining money under false pretenses, fraudulent inducement, conspiracy to breach contract, and conspiracy to defraud against North Star, Ltd., Les Hawkey, P & S, Inc., Dixie Hawkey, William Ezell, Charles A. Schindler, and Charles Stintson (collectively referred to as defendants). The facts that gave rise to this action concern the solicitation of producers to enter defendants' planned Rex rabbit fur business. This appeal involves only the denial of producers' motion to permit discovery relating to their punitive damage claim.

Producers contended at the hearing held on December 4 and 22, 1989, that the following facts established their right to obtain discovery on their punitive damage claim under the statute. Producers were first introduced to the Rex rabbit business of North Star, Ltd. when they responded to a newspaper advertisement that put them in contact with Les and Dixie Hawkey. Defendants personally contacted prospective producers to persuade them to enter the Rex rabbit business. In addition, defendants distributed promotional information touting the advantages of joining their rabbit growing and marketing business, such as "performance guaranteed," "knowledgeable guidance," "management assistance," "trouble shooting," and "central grading, storage, [and] auctions." Other information outlined management's obligations to process, distribute and market pelts and carcasses. Included in the promotional information were projected net income figures which, by the third year, were to reach $39,557 based on what were called conservative estimates. The rabbit business of North Star was also promoted as "The Ultimate Tax Shelter," with instructions on how to structure the operation to "pay little or no income tax."

Serious prospects were brought to Hawkeys' farm where the rabbit business was operated. During Clarence and Anna Marie Frost's visit to the farm, Les Hawkey and Charles Schindler allowed Frosts to tape record their sales pitch for another prospective purchaser who was unable to come to Hawkeys' farm. This tape was introduced at the hearing, and Les Hawkey later admitted making several promises to the prospective producers. He admitted that in that conversation he made statements such as: "We'll guarantee you that we'll buy the pelts at market price"; "We will buy the pelts back from you until we get organized and get ten or twenty thousand"; and "We're working right now on a processing plant." However, Hawkey's testimony at the hearing was that "we had never, ever intended to buy fifteen to twenty thousand pelts and keep them on hand."

In 1983, producers each entered into a contract with North Star, Ltd. and its principals Les Hawkey, Dixie Hawkey, and William Ezell. Each paid approximately $12,000 in exchange for eighteen breeding rabbits, cages, expert advice, slaughtering facilities, and processing and marketing breeding rabbits, fur, and meat raised by producers. However, the contract they were required to sign recited a payment of only $495.00. It also included standard merger language that "there are no oral or other conditions, promises, covenants, representations or inducements in addition to or at variance with any of the terms [of the contract.]"

After signing up with North Star, Ltd., producers encountered many problems and broken promises. The rabbits became sick and some did not reproduce. Defendants failed to provide trouble-shooting guidance by experts, and to come to producers' farms to pick up mature rabbits. No processing plant was ever built, the rabbits were not processed in a federally inspected plant but in Hawkeys' barn, the meat was not marketed, and the pelts were not prepared for marketing. Producers claimed that in May 1984 Hawkey told them that he and North Star were out of the Rex rabbit business and had given up on the enter-

prise. Producers Jim Terveen and Ed Zylstra testified that they did not even see evidence that North Star had even prepared to perform their obligation to collect, process, and market the rabbit pelts and meat.

After hearing this evidence, the trial court observed that "[m]ost of the evidence ... goes to the issue of breach of contract." On February 21, 1990, the trial court ruled that producers had failed to satisfy the statutory prerequisites for discovery on their punitive damages claim. We subsequently granted producers' petition for intermediate appeal.

## ISSUE

DID THE TRIAL COURT ERRONEOUSLY DENY PRODUCERS' MOTION FOR DISCOVERY RELATING TO PUNITIVE DAMAGES PURSUANT TO SDCL 21–1–4.1?

## ANALYSIS

■ In their brief, producers challenge the trial court's decision on three bases: (1) the statute employs a burden of proof inconsistent with *Aschoff v. Mobil Oil Corporation*, 261 N.W.2d 120 (S.D.1977); (2) the statute is a form of summary judgment and decisions under the statute must comport with traditional summary judgment standards; and (3) the statute is an unconstitutional deprivation of producers' right to a jury trial and right to pursue a common law remedy. Producers ask us to interpret the validity of SDCL 21–1–4.1 to evaluate whether the trial court erroneously denied their motion for discovery. We need not address these claims, however, because it is apparent that the evidence produced at the hearing was sufficient to satisfy the statute. We will not engage in statutory interpretation unless it is necessary to resolve the merits of the controversy. *Wold v. Lawrence County Comm'n*, 465 N.W.2d 622 (S.D.1991). *See State v. Big Head*, 363 N.W.2d 556 (S.D.1985) (constitutionality reviewed only if necessary to make a decision on the merits).

SDCL 21–1–4.1 reads:

In any claim alleging punitive or exemplary damages, before any discovery relating thereto may be commenced and before any such claim may be submitted to the finder of fact, the court shall find, after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against.

When seeking to obtain discovery regarding a claim for punitive damages, the moving party must establish, based on clear and convincing evidence, that a reasonable basis exists to believe that there has been willful, wanton or malicious conduct. *Vreugdenhil v. First Bank*, 467 N.W.2d 756 (S.D.1991); *Flockhart v. Wyant*, 467 N.W.2d 473 (S.D.1991). The statute requires a preliminary showing of a reasonable basis to support a claim for punitive damages to prevent the bringing of unfounded claims for the purpose of harassment. *See* Driscoll, *Statutory Restrictions on the Discovery and Trial of Punitive and Exemplary Damage Claims in South Dakota*, 33 S.D.L.Rev. 247, 251 (1988).

■ When reviewing the trial court's interpretation of the legal effect of the evidence presented, we are presented with a mixed question of fact and law which is fully reviewable. *Permann v. Department of Labor, Unemployment Ins. Div.*, 411 N.W.2d 113, 116 (S.D.1987). The facts presented at producers' hearing were sufficient as a matter of law to entitle them to obtain discovery on their claim for punitive damages based on fraud. Hawkey testified at the hearing that "we [defendants] had never, ever intended to buy fifteen to twenty thousand pelts and keep them on hand." But he later went on to admit that he promised producers "We will buy the pelts back from you until we get organized and get ten or twenty thousand" and "we'll take all the pelts we can get." Hawkey's own testimony discloses that a promise was made to buy ten to twenty thousand pelts from producers but that defendants never in fact intended to buy the pelts. This testimony of Hawkey, together with his admissions, evidences at a minimum willful

conduct sufficient to establish a reasonable basis for a claim of fraud. *See Northwest Realty Co. v. Colling*, 82 S.D. 421, 433, 147 N.W.2d 675, 683 (1967) (essential elements of fraud).

The trial court reviewed the producers' request for admissions, including Hawkey's statements that North Star, Ltd. guaranteed that they would buy the pelts back at market price, and that they would buy ten to twenty thousand pelts. The court disregarded these statements, however, stating "I suppose that's what the contract says[,]" and denied producers' motion because "most of the evidence ... goes to the issue of breach of contract." Apparently, the trial court failed to review the contracts which were in evidence. If it had, it would have discovered that the promise to buy twenty thousand pelts was not part of the written contract, but a statement made to convince producers to buy into their rabbit enterprise. The trial court failed to recognize that Hawkey's testimony that they, the defendants, never actually intended to buy twenty thousand pelts provided evidence of fraudulent inducement to enter into the contracts. On this basis alone the trial court erred in not granting producers' motion for discovery.

Furthermore, producers James Terveen, Ed Zylstra and Clarence Frost testified during the hearing about the promises which they relied on in entering into the contracts with North Star, Ltd. Terveen testified that Charles Schindler told him that North Star, Ltd. would come to the producers' farm to pick up rabbits, and would then slaughter and process the meat and prepare the pelts for marketing, at the Hawkey farm. Terveen and Ed Zylstra also testified about the problems they encountered in breeding the rabbits delivered to them by North Star, Ltd. and that they received no expert help to deal with these problems. A number of producers built or remodeled buildings to accommodate the projected growth in the numbers of rabbits. When producers did not receive payment for their first deliveries of rabbits to North Star, Ltd., they called a meeting with Hawkey. Hawkey then told them they would have to find a market on their own because they, defendants, were all done and were out of the rabbit business.

Les Hawkey's testimony did not refute the testimony of the producers and former North Star sales representative regarding the representations made to induce producers to contract with North Star. Most of Hawkey's testimony centered on his attempts to locate markets for pelts and meat. When asked about promises made, rabbits delivered to him or meetings with producers, Les Hawkey frequently said that he couldn't remember any of the events.

■ The testimony and evidence necessary to satisfy SDCL 21–1–4.1 is a lower order of proof than that required at trial. *Vreugdenhil*, 467 N.W.2d at 760. The statute requires only that there be a reasonable basis to believe that there has been willful, wanton, or malicious conduct and that this be proven by clear and convincing evidence. *Id.; Flockhart*, 467 N.W.2d at 475. As a matter of law, the facts before the trial court were sufficient to satisfy the statute, and it was error for the trial court to deny producers' motion for discovery.

The order of the trial court denying producers' motion for discovery relating to punitive damages is reversed, and the matter is remanded for proceedings consistent with this opinion.

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.

AMUNDSON, J., not having been a member of the Court at the time this case was considered, did not participate.