Unified Judicial System

 

 
 Formatting courtesy of the State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501
ERICA JO BEERMANN,
Plaintiff and Appellant,
v. KEVIN G. BEERMANN,
Defendant and Appellee. 
South Dakota Supreme Court
Appeal from the First Judicial Circuit, Union County, SD
Hon. Arthur L. Rusch, Judge
#19584 - Reversed 
R. Scott Rhinehart, Sioux City, IA
Elizabeth Row, North Sioux City, SD
Attorneys for Plaintiff and Appellant. 
Shari B. Langner, Sioux Falls, SD
Attorney for Defendant and Appellee. 
Argued Oct 23, 1996; Opinion Filed Feb 12, 1997 
SABERS, Justice. 
[Â¶1] Erica tried to get a temporary protection order to prevent her father from physically abusing her during visits to his home. The trial court refused her request, stating the domestic abuse laws were not applicable to abuse between a parent and child. Application for Writ of Mandamus was made to this court and we issued an Alternative Writ of Mandamus, ordering the trial court to issue a temporary protection order and hold a hearing or to show cause. The trial court determined again that the domestic abuse laws were not available to a minor and also ruled that Erica had not proven domestic abuse. We reverse and remand.
FACTS 
[Â¶2] Erica Beermann is the daughter of divorced parents, Barbara Beermann DeJong and defendant Kevin Beermann. On September 15, 1995, Erica, then 14 years of age, was visiting her father in his home. During an argument between the two, Kevin picked her up, dropped her, picked her up again and threw her into a chair. He screamed and swore at her, all the while holding her in the chair by her shoulders. 
[Â¶3] One week later, Erica went to court seeking a temporary protection order under the "Protection From Domestic Abuse" chapter of the South Dakota Code. The trial court refused her request, stating abuse between a parent and child was not covered by that chapter. She sought a Writ of Mandamus from this court to order the trial court to issue a temporary restraining order. She argued there was no speedier or more adequate remedy than to proceed under the domestic abuse laws. The Supreme Court issued an alternative writ of mandamus, ordering the trial court to issue a temporary restraining order, which it did. The order required Kevin to refrain from physically abusing her when she visited his home.
[Â¶4] The Alternative Writ also required the trial court to conduct a hearing or to show cause on the matter. Following that hearing, the trial court again held the domestic abuse chapter did not provide an appropriate remedy for abuse between a parent and child. The court stated that her minority precluded her from maintaining a suit in her own name but that she had other options: 1) Her mother could seek to modify the visitation order; and 2) Erica could seek relief under the "Protection of Children From Abuse or Neglect" chapter of the South Dakota Code. The court also held she failed to prove by a preponderance of the evidence that domestic abuse occurred. She appeals.
[Â¶5] Whether the "Protection From Domestic Abuse" Chapter applies to abuse between a parent and a minor child.
[Â¶6] Whether the domestic abuse chapter supplies a remedy for a minor seeking protection from a parent presents a question of law. "The proper construction to be given a statute is a question of law which is fully reviewable. Accordingly, the questions presented are reviewed de novo." In re Estate of Chilton, 520 NW2d 910, 912 (SD 1994) (citations omitted).
[Â¶7] The procedure for obtaining a protection order is set forth in SDCL 25-10-3, which provides, in relevant part: 
There exists an action known as a petition for a protection order in cases of domestic abuse. Procedures for the action are as follows: 
(1) A petition under this section may be made by any family or household member against any other family or household member. 
(2) A petition shall allege the existence of domestic abuse and shall be accompanied by an affidavit made under oath stating the specific facts and circumstances of the domestic abuse. 
..... 
The clerk of the circuit court shall make available standard petition forms with instructions for completion to be used by a petitioner. The department of social services shall prepare the standard petition form. 
(Emphasis added). Clearly, the statute is not limited to adult family or household members and there is no language which would exclude application of the chapter to a parent-child relationship. Furthermore, "family or household members" are defined as "spouses, former spouses or persons related by consanguinity, adoption or law, persons living in the same household, persons who have lived together, or persons who have had a child together[.]" SDCL 25-10-1(2). This definition embraces the father-daughter relationship. See Webster's New Int'l Dictionary 482 (3d ed. 1967) (defining consanguinity as "the quality or state of being related by blood or descended from a common ancestor"). 
[Â¶8] The trial court held Erica could not proceed under the domestic abuse statutes because of her minority. The court relied on two statutes in this ruling. See 15-6-17(c), which provides, in relevant part: 
Whenever a minor or incompetent person has a guardian or conservator, such guardian or conservator may sue or defend on behalf of the minor or incompetent person. If the minor or incompetent person does not have a guardian or conservator, he may sue by a guardian ad litem. The court shall appoint a guardian ad litem for a minor or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the minor or incompetent person and may make such appointment notwithstanding an appearance by a guardian or conservator. 
(Emphasis added). The necessity of a guardian ad litem, a guardian, or a conservator is not, according to this statute, a jurisdictional bar; it is simply a procedural prerequisite that the court analyze what is "proper for the protection of the minor" and then either appoint one or make other necessary arrangements. See In re Guardianship of Petrik, 1996 SD 24, Â¶15, 544 NW2d 388, 391 ("The appointment of a guardian ad litem is procedural[.]"); M.S. v. Wermers, 557 F2d 170, 174 (8thCir 1977) (noting that SDCL 15-6-17(c) is virtually identical to the provisions of Rule 17(c) of the Federal Rules of Civil Procedure and pointing out that appointment of a guardian ad litem under the federal system is discretionary so long as the court enters a finding that the minor is adequately protected in the absence of an appointment); accord Collins v. York, 267 A2d 668, 671 (Conn 1970) (finding that bringing of action by minor without aid of another was "an amendable irregularity which could be waived."); Smith v. Langford, 255 So2d 294, 296 (FlaDistCtApp 1971) (construing identical state provision and concluding the appointment of a guardian ad litem is discretionary and procedural, and therefore not a jurisdictional question). 
[Â¶9] The trial court also relied upon SDCL 26-1-3, which does not have the same element of discretion as SDCL 15-6-17(c): 
A minor may enforce his rights by civil action, or other legal proceedings, in the same manner as a person of full age. However, a guardian or conservator must be appointed to conduct the same. 
SDCL 26-1-3 (emphasis added). When read together, these two statutes do not have the implications attributed them by the trial court, i.e., that they barred a proceeding under Chapter 25-10 by a minor. On the contrary, SDCL 26-1-3 expressly provides a minor may bring a civil action, so long as a guardian or conservator is appointed. Citing SDCL 15-6-17(c), Kevin argues it was Erica's responsibility to petition the court for the appointment; we have not found such language in the statute. It is the trial court's duty to make that appointment. See SDCL 15-6-17(c). See also Serway v. Galentine, 170 P2d 32, 34 (CalCtApp 1946): 
The court is, in effect, the guardian of the minor and the guardian ad litem is but an officer and representative of the court. In such a case it will be presumed that the court will look to the best interests of the child and will render a decree that will establish and preserve her rights. (Citation omitted). 
[Â¶10] In its findings of facts and conclusions of law, the court stated that this action "[arose] from defendant's and Barbara Beermann DeJong's divorce action," and that Erica's petition for a protection order was "[her mother's] idea," and stemmed from Barbara's desire "to modify Erica's visitation with her father." Such findings do not suggest dismissal, but rather the appointment of a guardian without similar conflicts, and the court was free to appoint a guardian of its choosing. SDCL 15-6-17(c). See also Kingsbury v. Buckner, 134 US 650, 679, 10 SCt 638, 648, 33 LEd 1047, 1058 (1890) (commenting on a court's authority with respect to a guardian ad litem and noting, "It was in the power of the court, under whose eye he acted, at any time to inquire into his fitness to represent the interests of the infant, to remove him if he was a mere intermeddler, and to allow some one else to be substituted in his place."); accord Petrik: 
[The] statutory language indicates a reliance upon the court's discretionary powers to weigh such matters as conflicts of interest. Courts have authorized the appointment of a guardian ad litem where it is apparent the dispute is "centered on the desire of the parents [and grandparents] rather than the best interests of the child." Dees v. Dees, 41 Wis2d 435, 164 NW2d 282, 287 (1969); Mawhinney v. Mawhinney, 66 Wis2d 679, 225 NW2d 501, 504 (1975). "When there is a potential conflict between a perceived parental responsibility and an obligation to assist the court in achieving a just and speedy determination of the action, parents have no right to act as guardians ad litem." M.S. v. Wermers, 557 F2d 170, 175 (8thCir 1977). Where a guardian ad litem has been appointed, the court stands in a position of parens patriae and must act in the best interests of the minor. The duty of a court-appointed guardian ad litem of a minor is to the court and not to the parents of a minor. Gerber v. Peters, 584 A2d 605, 607 (Me 1990). 
1996 SD 24 at Â¶15, 544 NW2d at 391. Therefore, in these circumstances, the trial court could have concluded no guardian was necessary or appointed one, if deemed necessary.{fn1}  We are not convinced that the need for a guardian at the petition stage outweighs the need for immediate court protection. As Justice Konenkamp noted in State v. Hauge, "In the middle of domestic strife, preserving the mental and emotional health of the vulnerable must override other less compelling interests." 1996 SD 48, Â¶10, 547 NW2d 173, 176 (upholding constitutionality of protection order prohibiting any verbal contact). 
[Â¶11] The trial court suggested two alternatives to proceeding under the domestic abuse statutes. First, the court stated Erica's mother could seek to modify the visitation order. SDCL 25-4-45 gives the court continuing jurisdiction to modify a noncustodial parent's visitation rights. One problem with that solution, at least in Erica's case, is that she never sought to modify or end her father's visitation rights. 
[Â¶12] Another problem is that modification must be sought by the custodial parent, who may be unwilling or financially unable to seek such relief. In contrast, a victim can fill out the standard preprinted forms for a temporary restraining order without assistance from counsel, and can obtain the order without paying costs by filing an affidavit of indigency. SDCL 25-10-3. Moreover, relief via visitation modification would take much longer than a temporary restraining order, which the court can issue upon application. SDCL 25-10-6. 
[Â¶13] The trial court also suggested the remedy in Chapter 26-8A of the South Dakota Code ("Protection of Children From Abuse or Neglect"). Relief under this chapter may be inadequate for the reasons stated above; most significantly, there is none of the immediacy available under the domestic abuse laws. "[T]he emergency provisions [of domestic violence laws] enable a court to respond quickly and flexibly to advance warnings of abuse." Eichenlaub v. Eichenlaub, 490 A2d 918, 922 (PaSuperCt 1985). In contrast, under Chapter 26-8A, the victim must first file a complaint, or wait for one to be filed on her behalf, and then wait for an investigation to be conducted and a report to be compiled. See generally SDCL ch. 26-8A. The circumstances under which a law enforcement or court services officer may take immediate action without a court order are extreme and involve the actual taking of temporary custody. {fn2}  
[Â¶14] Erica did not seek such extraordinary measures; the order she requested was to insure nonviolence during visitation. When a court issues a protection order, it puts the would-be abuser on notice that his or her actions will be scrutinized. See, e.g., Commonwealth v. Gordon, 553 NE2d 915, 919 (Mass 1990) ("An order to 'refrain from abus[e]' serves the obvious purpose of putting an abusive party on notice of the possibility of criminal penalties, thereby deterring further abuse.") (alteration in original). The issuance of a protection order to Erica would put Kevin on such notice, and fulfill the purposes of the "Protection from Abuse" chapter at the same time. In Eichenlaub, the court noted the goal of the legislature in enacting similar provisions was not retrospective punishment, but instead "advance prevention of physical and sexual abuse." 490 A2d at 922 (describing the domestic violence laws as a "vanguard measure dealing with the problems of wife and child abuse"); see also CalFamCode Â§ 6220 (providing that the purpose of the Prevention of Domestic Violence chapter is "to prevent the recurrence of acts of violence."). 
[Â¶15] We disagree with the trial court's conclusion that Erica had available a remedy as speedy and adequate as the one under the Protection of Domestic Abuse chapter. See Hauge, 1996 SD 48 at Â¶8, 547 NW2d at 176 ("Judges must exercise broad authority to fashion necessary safeguards for the unpredictable insecurities victims of domestic abuse often face.") (noting the flexibility afforded the judiciary in fashioning relief under SDCL 25-10-5(6)); see also State ex rel. Williams v. Marsh, 626 SW2d 223, 226 (Mo 1982) (en banc) (noting that "[e]xisting remedies ... have proved to be less than adequate in aiding the victims of abuse and in preventing further abuse"); Yankoskie v. Lenker, 526 A2d 429, 433 (PaSuperCt 1987) ("[D]omestic violence and spousal and child abuse are serious and widespread societal problems which are effectively beyond reach, absent such legislation.") (quoting Commonwealth v. Allen, 486 A2d 363, 367 (Pa 1984), cert. denied, 474 US 842, 106 SCt 128, 88 LEd2d 105 (1985)). 
[Â¶16] Whether the evidence established domestic abuse. 
[Â¶17] One seeking relief under the domestic abuse laws must prove abuse by a preponderance of the evidence. SDCL 25-10-5. "Domestic abuse" is defined as "physical harm, bodily injury or attempts to cause physical harm or bodily injury, or the infliction of fear of imminent physical harm or bodily injury between family or household members[.]" SDCL 25-10-1(1) (emphasis added). The trial court held Erica failed to meet this burden. "When reviewing the trial court's interpretation of the legal effect of the evidence presented, we are presented with a mixed question of fact and law which is fully reviewable." Fiegen v. North Star, Ltd., 467 NW2d 748, 750 (SD 1991) (citing Permann v. Department of Labor, Unemployment Ins. Div., 411 NW2d 113, 116 (SD 1987)). 
[Â¶18] The trial court found that Kevin used "reasonable force" to "correct" Erica in accordance with SDCL 22-18-5, which provides: 
To use or attempt or offer to use force upon or toward the person of another is not unlawful if committed by a parent or the authorized agent of any parent, or by any guardian, teacher or other school official, in the exercise of a lawful authority to restrain or correct his child or ward and if restraint or correction has been rendered necessary by the misconduct of such child or ward, or by his refusal to obey the lawful command of such parent, or authorized agent, guardian, teacher or other school official, and the force used is reasonable in manner and moderate in degree. 
(Emphasis added). This statute does not give a parent free rein nor immunity in the discipline of children. See, e.g., State v. Goodman, 384 NW2d 677, 682 (SD 1986) ("[A] parent, under appropriate facts, may ... be charged with committing a simple assault upon his child."). 
[Â¶19] Initially, the question is whether the "restraint or correction" was "rendered necessary" by Erica's refusal to sit after ordered to by her father and whether his use of physical force to force her to sit and remain seated, accompanied by shouting and swearing, was "reasonable in manner and moderate in degree." SDCL 22-18-5. Kevin's response to his daughter appears to be more loss of self-control than loss of control over Erica. The statute did not intend to encompass behavior resulting from a parent's lost temper and uncontrolled rage. It is difficult to conclude that Kevin employed "reasonable force" when all he claims to remember is grabbing Erica by the shoulder and putting her in the chair. 
[Â¶20] Erica testified she was scared and upset by her father's behavior. She was afraid he was going to hurt her: 
A. [I] thought he might hurt me. 
Q. Even though he's never hurt you before? 
A. (Witness nods head in affirmative manner). 
Q. Yah. Is that what your mom told you? 
A. (Witness shakes head in a negative manner). 
Q. Where did you get the idea he might hurt you? 
A. From him. From him hurting my mom. 
Q. Your mom told you about that, didn't she? 
A. No. I was there. 
As indicated above, the definition of domestic abuse includes "the infliction of fear of imminent physical harm or bodily injury." SDCL 25-10-1(1). Whether Erica's fear was irrational, as the trial court concluded, must be analyzed in light of her knowledge of her father's violent history: {fn3}  
[The victim's] state of mind could very well have been the product, in part at least, of her past interactions with appellant. The fear she claimed to have felt and the reasonableness of that fear could and should be determined with reference to her history with appellant. 
Eichenberger v. Eichenberger, 613 NE2d 678, 682 (OhioCtApp 1992); see also Gordon, 553 NE2d at 921 (holding that evidence of prior confrontations was relevant as to whether victim's fear was reasonable). {fn4}  
[Â¶21] To ignore Kevin's violent history is to detract from its effect upon Erica. See Williams, 626 SW2d at 229: 
In a large percentage of families, children have been present when the abuse occurred. In one study, fifty-four percent of the battered women interviewed reported that their husbands had committed acts of violence against their children as well as against them. Even if the child is not physically injured, he likely will suffer emotional trauma from witnessing violence between his parents. Abuse appears to be perpetuated through the generations; an individual who grows up in a home where violence occurs is more likely either to abuse others as an adult or to be a victim of abuse. Adult abuse, therefore, is a problem affecting not only the adult members of a household but also the children. 
(Citations omitted). 
[Â¶22] The trial court noted Erica and Kevin had vacationed together two months before the September, 1995 incident and had "fun." She testified her father had never been violent toward her in the past. Therefore, the trial court held that "It is not logical for the Court to believe plaintiff was suddenly afraid of defendant because of his actions on September 15, 1996." Family violence does not begin on day one of any relationship, and periods of harmony in a violent home are common and expected. Domestic abuse involves a very common "cycle of violence." Hauge, 1996 SD 48, Â¶10, 547 NW2d at 176. There are numerous reported cases discussing domestic abuse; the consensus among the experts is that domestic violence is not random but follows an identifiable, three-stage circular process: 
The battering cycle has "three distinct phases": the tension building phase; the explosion or acute battering phase; and the calm, loving respite (often called the honeymoon phase). 
State v. Stringer, 897 P2d 1063, 1069 (Mont 1995); accord State v. Borrelli, 629 A2d 1105, 1113 (Conn 1993); State v. Richardson, 525 NW2d 378, 380 (WisCtApp 1994); State v. Bednarz, 507 NW2d 168, 170 (WisCtApp 1993); Witt v. State, 892 P2d 132, 137 (Wyo 1995); see also In re Brittany M., 1992 WL 135402, at *5 (ConnSuperCt June 9, 1992) (noting expert's testimony predicting probability of violence following "honeymoon phase" if abused child returned to her mother). 
[Â¶23] That Kevin was not directly abusive to Erica before supports, rather than negates, her fear at his sudden rage, verbal outburst, and aggressive physical conduct. See Eichenberger, 613 NE2d at 682 (finding wife's fear of physical harm rational "despite husband's understandable view that the fear was irrational in light of his lack of acts causing physical harm in the past."). "Domestic violence and family disharmony often involve a pattern of escalating violence. The [Illinois Domestic Violence Act] provides a statutory framework for effecting a brake on that escalation and, as such, is to be liberally construed." In re Marriage of Hagaman, 462 NE2d 1276, 1280 (IllAppCt 1984) (emphasis added). 
[Â¶24] Under Fiegen, the legal effect of the evidence presented is a mixed question of fact and law and fully reviewable. 467 NW2d at 750. Because Kevin's position is that he "cannot remember" the details, there is little evidence to support his denial of domestic abuse. The legal effect of the evidence presented tends to establish domestic abuse under SDCL 25-10-1(1). Fiegen, 467 NW2d at 750. We cannot say Erica's fear was unfounded. However, in a very abbreviated hearing, the trial court heard both Erica and Kevin and determined that there was not a factual basis to necessitate protection for Erica under the act. 
[Â¶25] We believe the hearing was unnecessarily abbreviated, perhaps by the court's conclusion that the domestic abuse statutes did not provide relief to minor children of divorced parents. In addition, the relationship between Erica's parents has been, and is, a stormy one in which neither will simply let it be. See Beermann v. Beermann, 526 NW2d 127 (SD 1995); Beermann v. Beermann, 546 NW2d 404 (SD 1996). Kevin accused Erica's mother of putting her up to this proceeding. In its comments from the bench at the close of the hearing, the trial court seemed to agree, noting that the petition was probably mother's idea, and not Erica's, judging from the fact that the petition was prepared in mother's handwriting. 
[Â¶26] There is no immediate threat to the safety of Erica. In fact, she sought to be allowed to continue visitation with her father but under a protection order. We reverse and remand to the trial court for a full evidentiary hearing of the entire family situation to determine whether there has been domestic abuse committed on Erica and if so, what action is appropriate to protect her from a repeat occurrence. 
[Â¶27] We conclude that the "Protection From Domestic Abuse" statutes were enacted to provide an immediate and affordable solution to family members, regardless of age, who are subjected to domestic abuse. We reverse and remand for a full hearing consistent with this opinion. 
[Â¶28] Kevin has filed a motion and affidavit requesting attorney's fees of $1,012.30 and costs of $215.00 against Erica, which motion is denied. Erica has filed a motion and affidavit for tax, costs, and attorney's fees in the amount of $5,687.93 against Kevin, which motion is granted to the extent of $1,000.00. 
[Â¶29] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur. 
Footnotes  
fn1. Cf. SDCL 25-5-16, which appears to recognize a minor's right to bring a similar action independently: 
Judicial cognizance of parental abuses - Freeing child from parental dominion. The abuse of parental authority is the subject of judicial cognizance in a civil action in the circuit court, brought by the child or by its relatives within the third degree, or by the officers of the poor where the child resides; and when the abuse is established, the child may be freed from the dominion of the parent and the duty of support and education enforced. (Emphasis added). 
fn2 . SDCL 26-7A-12 provides that a child may be taken into temporary custody by a law enforcement officer without order of the court if the child is subject to arrest, abandoned, seriously endangered, a runaway, or under the influence of drugs or alcohol. 
fn3 . Kevin did not dispute the violent nature of his relationship with his former wife at the hearing, or in his brief to this court. 
fn4 . Erica's fear must be established by a preponderance of the evidence, SDCL 25-10-5, under an objective, not subjective, test based on all of the circumstances.