**Elizabeth VIRUET, ex rel. Rosemary VELASQUEZ, Appellant,**

v.

**Elizabeth CANCEL, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 18, 1998.
Filed March 11, 1999.

Patricia A. Dubin, Philadelphia, for appellant.

Before McEWEN, President Judge, and BROSKY and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Elizabeth Viruet on behalf of Rosemary Velasquez, a minor, appeals from the order issued by the Honorable Thomas D. Watkins vacating a temporary Protection from Abuse order, dismissing her petition under the Protection from Abuse Act (hereinafter PFA petition) with prejudice, and setting forth a requirement to post a bond prior to filing any

future petitions in abuse. For the reasons set forth below, we reverse the order with respect to the procedures that it sets forth for future petitions in abuse and the finding that the petition was frivolous.

¶ 2 The factual background of this case is as follows.

Plaintiff, Rosemary Velasquez, is the sixteen year old daughter of Defendant, Elizabeth Cancel and the granddaughter of the Petitioner, Elizabeth Viruet. The minor child testified that on April 15, 1997, at approximately 5:30 p.m., she was at home at 3902 N. Marshall Street, Philadelphia, where she resided with her mother, the Defendant herein. She testified that she was in the kitchen doing dishes when her mother came home and started to beat and verbally abuse her for no apparent reason. Obeying her mother's demand, she then went upstairs, where her mother continued to hit, kick, and throw her against the wall. Additionally, she testified that when she attempted to get away from her mother's beating, her mother threw her against the bed causing her to hit her back. After escaping downstairs, Rosemary was prevented from leaving the house by a neighbor, Milagros Sanchez. At this point, Rosemary claims that her mother again pushed her causing her to fall into the stairs, again injuring her back. Subsequently, she proceeded upstairs where she remained in her bedroom for the remainder of the night.

She testified that the next morning she went to school. During the morning session, she allegedly fainted because she had not eaten breakfast. When she was taken to the school nurse, the nurse noticed bruises and was directed to call Rosemary's grandmother, Elizabeth Viruet. The grandmother, Plaintiff herein, arrived at the school and took Rosemary to a police station where she was interviewed by an officer assigned to the Sex Crimes Unit. At no time was Rosemary's mother, Respondent herein, contacted by the Plaintiff or anyone else.

Five days after the alleged incident, Rosemary was taken by her grandmother to St. Christopher's Hospital for an exami-

nation. The hospital report indicated that no specific injury could be found and that her physical condition was "unremarkable." [The hospital records also stated the following: lower left periorbital area slightly tender, left arm lateral aspect with a quarter and a dime sized brown ecchymosis, left kidney area with 2–3 diffuse ecchymoses, mild spinal/paraspinal tenderness, right knee with a quarter sized healing abrasion.]

Rosemary further testified to incidents of past physical abuse allegedly inflicted on her by her mother. . . .

. . . .

Officer David Smith of the Sex Crimes Unit of the Philadelphia Police Department questioned Rosemary and took photographs of the alleged injuries. He confirmed the presence of bruises on her body. However, he testified that Rosemary never mentioned any injury to her head.

Defendant mother, Elizabeth Cancel's account of the alleged incident of abuse differs substantially and materially from that of her daughter. Her version of the events occurring on the evening in question is further supported and corroborated by the testimony of a friend and neighbor, Milagros Sanchez.

Ms. Cancel testified that on the night of the incident, she and her daughter were celebrating her daughter's birthday. After dinner, Ms. Cancel received a telephone call from Ms. Sanchez informing her that she, Ms. Sanchez, had something important to discuss with Ms. Cancel concerning her daughter. At Ms. Sanchez's urging, the Defendant went to Ms. Sanchez's home where she was informed that her daughter Rosemary had been sitting on the porch that afternoon, kissing her boyfriend Angel. Furthermore, Ms. Sanchez told Ms. Cancel that Rosemary was planning to leave for Puerto Rico with him. Ms. Sanchez told Ms. Cancel that she received this information from her own daughter who was a close friend of Rosemary. Ms. Sanchez told Ms. Cancel that she had herself observed Rosemary sitting on the front steps with Angel, a known drug dealer.

Ms. Cancel returned home and confronted her daughter, who denied everything. Ms. Cancel then slapped her daughter. Later that evening, Ms. Sanchez went over to the Cancel home where she found mother and daughter arguing. Ms. Sanchez, at the request of Elizabeth Cancel, then confronted Rosemary with the information about her and Angel. After a heated exchange, Elizabeth Cancel slapped her daughter a few times on the face and on her back. Ms. Sanchez did not notice any bruises on Rosemary when she was at their house.

Ms. Cancel does not deny that she hit her daughter. However, she did deny the other allegations of physical abuse.

Trial Court 1925 Opinion, 5/28/98, at 1–4 (citations omitted).

¶ 3 The trial court found that the evidence did not prove abuse by a preponderance of the evidence so it vacated the temporary order that had been issued and dismissed the petition. In addition to dismissing the PFA petition, the trial court found Ms. Viruet's petition frivolous and a misuse of the Protection from Abuse Act. As a result, the court ordered that a bond to cover the court costs must accompany any future PFA petitions. This timely appeal followed.

¶ 4 Appellant presents five questions for our review. Four of the questions challenge the imposition of a requirement to post bond for any future PFA filings. The fifth question disputes the trial court's finding that appellant's petition was frivolous.[1] The resolution of appellant's first question fully resolves the challenges to the bond requirement. "Did the trial court violate Section 6106(b) of the Pennsylvania Protection From Abuse Act by ordering appellant to post a bond for court costs before filing additional abuse petitions after dismissing her April 16, 1997 abuse action." Appellant's brief at 3.[2]

¶ 5 In its opinion, the trial court stated that it perceived a serious problem with the

filing of frivolous abuse petitions and opined that these petitions are being used to "deal with other issues in Domestic Relations, to wit, custody, support and eviction," Trial Court Rule 1925 Opinion, 5/28/98, at 7, and to circumvent the custody and support docket. It also stated that the PFA Act was "devoid of any mechanism by which the courts can control and indeed restrain the flow of such frivolous petitions." *Id.* at 9. Consequently, the trial court opined that it would

fashion[ ] the following remedy: 1. After trial, if the court finds that the case was totally without merit and in effect a flagrant abuse of the court system, the court simply orders that before another Petition in Abuse can be filed by the same plaintiff, against the same defendant, a bond must be posted for court costs. By doing so, no one is being denied access to the court, nor is the petitioner being denied the right to file another Petition against the same defendant. The court is merely providing some kind of pre-insurance that the petition will be filed for legitimate reasons, and not merely as a means of harassment, threat or other improper motivation.

*Id.* at 10. Finding that the instant petition was "totally frivolous", the trial court ordered the appellant to post a bond for court costs when filing any future PFA petitions. Trial Court Order, 6/19/97.

¶ 6 The authority of the trial court to impose a pre-condition on the filing of future PFA petitions is a question of law. "If a trial court erred in its application of the law, an appellate court will correct the error." *Bernhardt v. Needleman*, 705 A.2d 875, 876–77 (Pa.Super.1997). Our scope of review on questions of law is plenary. *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996).

¶ 7 The error of the trial court's reasoning is fundamental. A plain reading of the Act makes it clear that financial restrictions, such as requiring the posting of a bond

---

1. Appellant does not request that we remand this case so that a PFA order can be entered, but rather seeks reversal of the bond requirement and the finding of frivolity of her petition.

2. We note that appellee, Elizabeth Cancel, did not file a brief in response to this appeal. The Pennsylvania Coalition Against Domestic Violence along with numerous other organizations against domestic violence from various states filed an amici curiae brief on behalf of appellant.

prior to filing a petition, are not to be imposed. It is well settled that a court must construe the words of a statute according to their plain meaning and to effectuate legislative intent. 1 Pa.C.S.A. § 1903(a), 1921(a); *Miller on Behalf of Walker v. Walker*, 445 Pa.Super. 537, 665 A.2d 1252, 1257 (1995); *Heard v. Heard*, 418 Pa.Super. 250, 614 A.2d 255, 258 (1992). We have reiterated the purpose of the PFA Act on numerous occasions, stating that

> [t]here can be no question regarding the nature of the risk the legislature sought to meet in enacting the [PFA] ... We have described the Act as a "vanguard measure dealing with the problems of wife and child abuse." The legislature recognized that existing legal means were inadequate to address these problems. The primary goal of the Act was therefore not retroactive punishment, but rather "[a]dvance prevention of physical and sexual abuse." This purpose is manifest in the emergency provisions of the Act that enable a court to respond quickly and flexibly to advance warnings of abuse.

*Eichenlaub v. Eichenlaub*, 340 Pa.Super. 552, 490 A.2d 918 (1985) (citations omitted) (alteration in original)

¶ 8 Our legislature amended several provisions of the PFA Act in 1994. One amendment rewrote two provisions in the Act that directly addressed fees and costs of filing abuse petitions. The prior provisions required a petitioner to prepay filing fees.[3] The relevant provisions now provide:

> (b) No prepayment of fees. —The petition shall be filed and services shall be made without prepayment of fees.

> (c) Assessment of fees and costs. —If the plaintiff prevails in the action, fees and costs shall be assigned to the defendant,

or, should the court determine that the defendant is not able to pay the costs of filing and service, the court shall waive fees and costs. If the plaintiff does not prevail, costs of filing and service may be assigned to the plaintiff or, should the court determine that the plaintiff is not able to pay the costs of filing and service, the court shall waive fees and costs.

23 Pa.C.S.A. § 6106(b)–(c). The plain meaning of these provisions is that a plaintiff is not required to prepay for the costs of filing a petition. Requiring a plaintiff to post a bond to cover court costs prior to filing a PFA petition is commensurate to requiring a prepayment of the fees and costs. A simple comparison of the earlier version of the fee and cost provisions with the amended version reveals that the legislature clearly intended to remove such financial barriers to filing an order for protection. Moreover, the imposition of posting a bond prior to filing a PFA petition will frustrate the expeditious nature of the Act and the legislative intent to remove financial barriers to obtaining protection from abuse. Therefore, we hold that ordering Ms. Viruet to post a bond prior to filing future PFA petitions on behalf of her granddaughter against her mother was in direct contravention of the Act, an attempt at judicial legislation, and an error of law.

¶ 9 Appellant also challenges the trial court's conclusion that her abuse petition was frivolous. In doing so, appellant asserts that the trial court erred in its analysis of the petition because it applied only the definition of abuse set forth in the Child Protective Services Law.[4] Upon a careful review of the hearing transcript, trial court opinion, and the appellant's brief, it is abundantly clear that the petition at issue was not frivolous. A frivolous lawsuit is one that lacks an argu-

---

**3.** Prior to the 1994 amendment, the Act provided as follows:

> (b) Affidavit of insufficient funds for fees. – If the plaintiff files an affidavit stating that plaintiff does not have funds available to pay the fees for filing service, the petition shall be filed and service shall be made without payment of fees, and leave of court to proceed in forma pauperis shall not be required.
> (c) Determination of indigency. – When the petition is filed without payment of fees, the court shall determine at the hearing on the

petition whether the plaintiff is able to pay the costs of filing and service. If the plaintiff is unable to pay the costs of filing and service, the court may waive the payment of costs or, if the plaintiff prevails in the action, assign them to the defendant. This subsection and subsection (b) apply to courts of common pleas and hearing officers.

23 Pa.C.S.A. § 6106(b)–(c) (amended 1994).

**4.** 23 Pa.C.S.A. § 6301–85.

able basis in law or fact. *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295 (1996).

¶ 10 The trial court opined that "due to the fact that said minor child was only sixteen years old, the court must apply the definition of 'child abuse' found in the Child Protective Services law." Trial Court 1925 Opinion, 5/28/98, at 6. This is an error of law. There are five definitions of abuse under the PFA Act. Proof of any one of the defined acts by a preponderance of the evidence permits a petitioner to obtain a protection order. The relevant definitions in this case are:

"Abuse." The occurrence of *one* or more of the following acts between family or household members ... or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury ...

. . . .

(4) Physically ... abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, ... without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S.A. § 6102(a)(1),(4)–(5) (emphasis added). To clarify, the PFA Act provides five different definitions of abuse, one of which "includes" the definition of abuse under the Child Protective Services Law.[5]

¶ 11 This Court specifically held in *Miller on Behalf of Walker v. Walker*, 445 Pa.Super. 537, 665 A.2d 1252 (1995), that the inclusion of the Child Protective Services Law definition of abuse in the PFA Act did not indicate that the legislature intended the protection under the PFA Act to extend only to acts causing serious physical injury to a child. We discussed the difference in the definitions of abuse under the PFA Act and the Child Protective Services Law in *Miller*, wherein we stated that

it is clear that the definition of abuse under the Protection from Abuse Act is broader than the definition of child abuse under the Child Protective Services Act. Under the Protection from Abuse Act, "bodily injury" caused "intentionally, knowingly, or recklessly" to a family or household member is included within the definition of abuse, as well as "serious bodily injury." 23 Pa.C.S.A. § 6102(a). As we have previously indicated, "family or household members" under the Protection from Abuse Act include "parents and children."

The General Assembly's purpose in including a broader definition of abuse than found in the Child Protective Services Law is undoubtedly related to the purposes of the Protection from Abuse Act. The goal of the Protection from Abuse Act is to provide an immediate remedy to victims of domestic abuse, thereby seeking to prevent further incidents of abuse from occurring. Thus, for a remedy to be available under the Protection from Abuse Act, it is not necessary that the physical harm to the child be as serious as that which is required for a child to be removed from his home and placed into protective custody. The goal of the Protection from Abuse Act is protection and prevention of further abuse by removing the perpetrator of the abuse from the household and/or from the victim for a period of time.

665 A.2d at 1258 (citations omitted). There is no provision in the PFA Act that requires a court to apply only the Child Protective Services Law definition of abuse if the petitioner is a minor. This fact, combined with our clear pronouncement that the PFA Act broadly defines abuse to allow a petitioner to obtain protection from abuse that may not rise to the level of abuse required for action under the Child Protective Services Law, renders the trial court's application of only the Child Protective Services Law definition of child abuse in a PFA hearing an error of law.

---

5. The trial court applied the part of the definition of child abuse under the Child Protective Services Law stating that child abuse includes acts that cause non-accidental "serious physical injury to a child under 18 years of age." 23 Pa. C.S.A. § 6303(b)(1)(i).

¶ 12 In *Miller, supra,* the mother filed a protection of abuse petition against the father when her son reported to her that his father had spanked him with a wood paddle. The son sustained bruises on his legs and arms. At the hearing, the son testified about the incident and that he experienced pain and bruising from his father hitting him and grabbing his arm. Pictures taken of the bruises were also introduced at the hearing. An abuse order was entered against the father directing him to refrain from abusing, harassing, or threatening the children. We held that the evidence was sufficient to support a finding of bodily injury within the meaning of the PFA Act. *Id.* at 1258.

¶ 13 Similarly, appellant indisputably presented an arguable claim for protection from abuse for bodily injury. There is no dispute that appellee hit her daughter multiple times on the evening in question. The grandmother testified that she saw bruises on her granddaughter's back, right arm, right knee, and left eye. The officer from the Sex Crimes Unit also testified that he saw bruises on Rosemary Velasquez's left eye, left side of her back, right arm, and left arm. Pictures taken by the officer that revealed these bruises were also introduced in evidence. Moreover, medical records introduced at trial further substantiated Ms. Velasquez's injuries. This evidence presents a claim with an arguable basis that appellant suffered bodily injury as defined under the PFA Act. Consequently, we hold that appellant's petition was not frivolous.

¶ 14 Finally, within appellant's argument against the frivolity of her petition, she also challenges the trial court's contention that the actions by the mother in this case were permissible acts of corporal punishment under 18 Pa.C.S.A. § 509(1). We addressed this issue in *Miller* and held that "appellant's argument that his conduct did not rise to the level of criminal culpability [under 18 Pa. C.S.A. § 509] does not defeat the trial court's protection from abuse order." 665 A.2d at 1252. In so holding we explained that

> [t]he Protection from Abuse Act does not outlaw corporal punishment by a parent. However, the Act will permit a remedy for bodily injury to a family or household member which is inflicted intentionally, knowingly, or recklessly.

> It is well known by most parents that corporal punishment properly inflicted will not produce bodily injury in a child. However, "corporal punishment" inflicted recklessly or in an enraged manner may result in bodily injury.

*Id.* at 1258. It is clear then that there are situations where a trial court is justified in entering an abuse order even if the evidence supporting the order would not rise to the level of criminal culpability under corporal punishment law.

¶ 15 In conclusion, we reverse the trial court's order requiring the posting of a bond to cover the court costs to file future PFA petitions and reverse the trial court's finding that appellant's petition was frivolous. Jurisdiction relinquished.

¶ 16 McEWEN, President Judge, Concurs in the Result.