J-S09016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| GRACE FORCIER | IN THE SUPERIOR COURT OF |
|---|---|
| Appellee | PENNSYLVANIA |
| v. | |
| DAWN MARIE BALL | |
| Appellant | No. 1243 EDA 2016 |

Appeal from the Order entered March 23, 2016
In the Court of Common Pleas of Northampton County
Domestic Relations at No: C-0048-PF-2016-00091

| GRACE FORCIER | IN THE SUPERIOR COURT OF |
|---|---|
| Appellee | PENNSYLVANIA |
| v. | |
| DAWN MARIE BALL | |
| Appellant | No. 1535 EDA 2016 |

Appeal from the Judgment of Sentence April 15, 2016
In the Court of Common Pleas of Northampton County
Domestic Relations at Nos: C-0048-PF-2016-00091 and CP-48-MD-
0000670-2016

BEFORE:  SHOGAN, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 22, 2017**

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant, Dawn Marie Ball, appeals *pro se* from the order entered March 23, 2016, and the judgment of sentence entered April 15, 2016, in the Court of Common Pleas of Northhampton County ("trial court") denying Appellant's claim for a return of property in the protection from abuse ("PFA") docket, and holding her in contempt for violating a PFA order. Upon review, we affirm in part, vacate in part, and remand for resentencing.

Briefly, the matter stems from cross PFA orders that the trial court granted on February 17, 2016.[1] On the same date, the trial court issued a rule to show cause upon Appellant's request for her personal possessions. The trial court held a hearing on the request for return of property on March 23, 2016; following which, the trial court denied the request. Appellant filed a notice of appeal on April 15, 2016, and on May 5, 2016, the trial court directed Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b). Appellant filed her Rule 1925(b) statement on May 16, 2016, and the trial court issued a Pa.R.A.P. 1925(a) opinion on June 8, 2016.

On March 29, 2016, Appellee filed a complaint for indirect criminal contempt against Appellant. Following a hearing on April 15, 2016, the trial court found Appellant in indirect criminal contempt and sentenced her to a suspended sentence of six months incarceration. Appellant filed a notice of appeal on May 12, 2016, and on June 9, 2016, the trial court directed

_____

[1] The parties consented to the trial court entering cross PFA orders.

Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b). On June 27, 2016, Appellant complied and filed a Rule 1925(b) statement and the trial court issued a Rule 1925(a) opinion on August 1, 2016.

On appeal, Appellant raises six issues for appeal, which we quote verbatim.

1. whether the Lower Court Committed a Miscarriage of Justice by Refusing to attain the ends of Justice by: A) debasing the defendant/Appellant in case No. <u>1243 EDA 2016</u> (and) B) by convicting An innocent person in case no. <u>1535 EDA 2016</u>.

2. whether the trial Judge Committed Misconduct against the defendant/Appellant in case no. <u>1243 EDA 2016</u>.

3. Should Any Alleged evidence by the Plaintiff in No. <u>1535 EDA 2016</u> been allowed.

4. whether the court Abused its discretion in <u>both </u>cases causing unfair judgment towards the defendant/Appellant.

5. Whether Court erred in accepted alleged evidence at the trial and failing to give Appellant proper time to Review it.

6. Was evidence in case no. <u>1535 EDA 2016 </u>sufficient to convict Appellant.

Appellant's Brief at 2 (sic).

This Court is to construe liberally, materials filed by a *pro se* litigant; therefore, this Court will address discernible arguments in the defective brief in the interest of justice. ***See Commonwealth v. Lyons***, 833 A.2d 245, 252 (Pa. Super. 2003). It appears that Appellant's issues 1, 2, and 4 are challenges to the merits of the March 23, 2016 order dismissing Appellant's return of property. Appellant's arguments are unclear, and unsupported by

- 3 -

citation to legal authority, thus Appellant's arguments are waived. Insofar as Appellant's arguments are not waived, they are meritless as the PFA action was not the correct method to request a return of property. Thus we adopt the reasoning of the trial court's June 8, 2016 opinion.

Appellant next challenges the May 15, 2016 judgment of sentence finding Appellant in indirect criminal contempt for violating the February 17, 2016 PFA order. Appellant's issues are woefully short of preserving or stating issues that would allow this Court to perform meaningful appellate review. Thus, even though Appellant is *pro se*, and this Court construes filings from *pro se* litigants liberally, Appellant fails to inform this Court of the issues to review. Accordingly, we conclude Appellant's issues are without merit. Regarding Appellant's sufficiency of the evidence claim, Appellant failed to preserve the issue for appeal. *See Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015).

> If [a]ppellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the elements or elements on appeal. [Where a] 1925(b) statement [] does not specify the allegedly unproven elements[,] . . . the sufficiency issue is waived [on appeal].

*Id.* (quoting *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008) (quoting *Commonwealth v. Flores*, 921 A.2d 517, 522-523 (Pa. Super. 2007))).

"A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the

court." ***Commonwealth v. Lambert***, 147 A.3d 1221 (Pa. Super. 2016) (citing ***Commonwealth v. Baker***, 722 A.2d 718, 720 (Pa. Super. 1998) (*en banc*)). Our standard of review for an indirect criminal contempt is "confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion." ***Id.*** (citations omitted). The elements of indirect criminal contempt include: "1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent." ***Id.*** (citing ***Commonwealth v. Walsh***, 36 A.3d 613, 619 (Pa. Super. 2012). Appellant's brief fails to identify which element or elements of indirect criminal contempt she is challenging; therefore, she has failed to preserve this issue on appeal. Even if Appellant preserved the issue, Appellant's claim is meritless, and we adopt the reasoning of the trial court's opinion of August 1, 2016. We direct that a copy of the trial court's June 8, 2016 opinion and August 1, 2016 opinion be attached to any future filings in this case.

While Appellant's claims fail, the sentence imposed by the trial court constitutes an illegal sentence. "It is well settled that this Court may address the legality of a sentence *sua sponte*." ***Commonwealth v. McCamey***, 154 A.3d 352, 357 (Pa. Super. 2017) (citing ***Commonwealth v. Infante***, 63 A.3d 358, 363 (Pa. Super. 2013)). Thus, this Court can raise

- 5 -

the issue. In the matter *sub judice* the trial court sentenced Appellant to a suspended sentence of six months incarceration for indirect criminal contempt. The only sentencing options the trial court could have imposed were

    (A)    a fine of not less than $300 nor more than $1,000 and imprisonment up to six months; or

    (B)    a fine of not less than $300 nor more than $1,000 and supervised probation not to exceed six months[.]

23 Pa.C.S.A. § 6114(b)(1)(i). Notably, "[a]n indefinitely suspended sentence is not a sanctioned sentencing alternative. Moreover, it is as true now as it was when [**Commonwealth v. Duff**, 200 A.2d 773 (Pa. 1964)] was decided, that an indefinitely suspended sentence violates 'true principles of probation' and causes confusion where none should exist." **Commonwealth v. Joseph**, 848 A.2d 934, 942 (Pa. Super. 2004) (quoting **Commonwealth v. Ferrier**, 473 A.2d 1375, 1378 (Pa. Super. 1984)). The sentence imposed by the trial court is an indefinitely suspended sentence, thus, it is an illegal sentence. Therefore, we vacate and remand for resentencing in compliance with § 6114(b)(1).

Order affirmed. Judgment of sentence vacated and remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/2017



IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
PFA DIVISION – LAW

| | |
|---|---|
| GRACE FORCIER | No.: C-48-PF-2016-00091 |
| Plaintiff | 1243 EDA 2016 |
| v. | |
| DAWN BALL | |
| Defendant | |

## MEMORANDUM OPINION PURSUANT TO PA.R.A.P. 1925(A)

This Memorandum Opinion is filed in accordance with Pennsylvania Rule of Appellate Procedure 1925(a). Dawn Ball (hereinafter, "Appellant") filed a Notice of Appeal to the Superior Court on April 15, 2016, from this Court's Order dated March 23, 2016 which denied Appellant's request for an Order in this Protection From Abuse action to retrieve her personal possessions.

This case originates from Grace Forcier's (hereinafter, "Ms. Forcier" [1]) Petition for Protection from Abuse (hereinafter, "PFA") against Appellant dated February 8, 2016. In her Petition, Ms. Forcier stated that Appellant was recently released from prison and took up residence with her. Ms. Forcier alleged that in the past, Appellant had broken a television and windows at Ms. Forcier's residence. Ms. Forcier also alleged that Appellant was verbally abusive toward her, that Appellant was manic depressive and manipulative, and that Appellant initiated an argument which resulted in Appellant pushing Ms. Forcier. Ms. Forcier averred that,

---

[1] Ms. Forcier is Appellant's Mother.

1

as a result of Appellant pushing her, she suffered a fall and injured her arm. Ms. Forcier indicated that Appellant made references regarding what would transpire upon Ms. Forcier's death and that she frequently sent text messages to Ms. Forcier, stating "drop dead" and "you owe me money." Ms. Forcier stated that she did not feel safe in the presence of Appellant because of her history and violence.[2]

On February 17, 2016, the Honorable Craig Dally entered a Final Protection from Abuse Order in favor of Ms. Forcier, directing that Appellant shall not abuse, harass, stalk or threaten Ms. Forcier, or contact Ms. Forcier by any means.[3]

---

[2] Appellant is well known to this Court and others due to her criminal history and penchant for excessive *pro se* court filings. In her PFA Petition, Ms. Forcier also stated that when Appellant was incarcerated, "to get even with the CO's [sic] she would spit at them and threw shit at them. She would clog her toilet. She had to be tazed." By way of background, we note that the Superior Court affirmed a sentence that Appellant received from the Lycoming County Court of Common Pleas following her convictions for aggravated harassment by a prisoner, simple assault, and harassment. *See Com. v. Ball*, No. 1909 MDA 2014, 2016 WL 563158 (Pa. Super. Ct. Feb. 12, 2016). In the Superior Court's Opinion affirming the judgment of sentence, the Court referenced the Opinion and Order of the Court of Common Pleas denying Appellant's post sentence motion. In this Opinion, the trial court noted the following:

> [b]y way of background, the charges were filed against Appellant on April 1, 2010. Reaching trial was a long and tortured process. The case has and continues to be complicated by Appellant's institutional behaviors, her demands on counsel, her relationship with counsel, Appellant's mistrust of counsel, her barrage of written correspondence to the court, a plethora of motions relating in large part to representation of Appellant, and the court seeking information from appropriate professionals with respect to Appellant's mental health.

*Id.* at *1 n.5 (internal punctuation omitted).

The affirmed judgment of sentence was nine to eighteen months' imprisonment in a state correctional institution, consecutive to a one to eight year prison sentence Appellant was already serving.

We also note that Appellant served up to eight years of incarceration on a Northampton County sentence. Our Northampton County docket from Appellant's criminal case (CP-48-CR-621-2006) reflects that Appellant plead guilty to a forgery charge in 2006. Following her guilty plea and sentence, Appellant appealed the judgment of sentence; however, said judgment was affirmed by the Superior Court. *See* 2605 EDA 2006. Appellant subsequently filed a total of six (6) Petitions for Post Conviction Collateral Relief and several additional appeals to the Superior Court. All of Appellant's PCRAs were dismissed, and the trial court's Orders were affirmed. *See* 2316 EDA, 2008 841 EDA 2010, and 744 EDA 2013.

[3] On the same date, in case number 48-PF-2016-00095, a Final Protection from Abuse Order was also entered in favor of Appellant, directing that Ms. Forcier shall not abuse, harass, stalk or threaten Appellant, or contact Appellant by any means. These Orders were entered by consent of the parties.



Also on February 17, 2016, Judge Dally entered a Rule to Show Cause[4] regarding Appellant's request for an Order to retrieve personal possessions. Attached to the Rule to Show Cause was a handwritten request from Appellant, which stated:

> I, Dawn Ball, have a final restraining order against me by Grace Forcier. I would like a [sic] order to go and get all my personal possessions at the residence. If possible, I would need a court hearing on this and a subpoena to get the video and photos from the state police (Swiftwater) to release them to prove that these items removed from my storage are mine. I also have a receipt for my table and chairs that she has in her house also and for the tub (with my personal items). And any and all mail delivered to that address of mine. I need a [sic] order to waive subpoena costs because I'm indigent or a [sic] order for Swiftwater State Police to release all videos and photos.

As a result of the aforementioned Rule to Show Cause, the parties appeared before the undersigned on March 23, 2016 for a hearing. Following a difficult and contentious hearing, made nearly impossible due to Appellant's behavior, we issued an Order denying Appellant's Request for an Order to Retrieve Personal Possessions. On that same date, Appellant reported to the PFA office and filed another request for her personal property. She filed this request under case number C-48-PF-2016-00095[5]. She then appeared before the Honorable Michael J. Koury to be heard on this request, without informing Judge Koury that another judge denied the request earlier in the day. Judge Koury entered the following Order: "And now, this 23rd day of March, 2016, under the Protection from Abuse Act, 23 Pa. C.S.A. 6101 et seq., it is hereby Ordered and

---

[4] The Rule to Show Cause states, in relevant part: "the Court issues a Rule to Show Cause upon Defendant, to show cause why Plaintiff's Request for an Order to Retrieve Personal Possessions should not be granted. The hearing on the above Rule shall be scheduled for (the) 23rd day of March, 2016." We note that this Order includes a typographical error insomuch as the terms "Defendant" and "Plaintiff" should be reversed. Dawn Ball, who was the Defendant, is the individual who wrote and signed the attached Request for an Order to Retrieve Personal Possessions.

[5] This docket is the PFA matter in which Appellant filed for a PFA Order on behalf of herself against Ms. Forcier on February 17, 2016.

3

*P 916.*

Directed: Plaintiff must pursue her (attached) claims for personal property through the civil process of replevin." [6]

In Appellant's Concise Statement of Errors Complained of on Appeal, which was filed on April 15, 2016, Appellant complains that our March 23, 2016 Order was entered in error for the following reasons:

1. Judge Sletvold discriminated and debased Defendant throughout the hearing without cause.
2. Judge Sletvold refused to let defendant state her case and was extremely unprofessional towards her.
3. Plaintiff admitted on record in court that she had defendant's property.
4. Judge Sletvold dismissed Defendant's case without cause.
5. Judge Sletvold questioned defendant about other cases she pursued in the court that had absolutely nothing to do with this case.
6. Judge Sletvold accused defendant and stated to defendant she had psychological problems, without cause or reason for doing so.
7. Judge Sletvold kept threatening to dismiss defendant's case throughout the hearing for no reason.
8. Sheriff then threaten [sic] to arrest defendant for saying she would complaint about the Judge's behavior and told defendant to "shut up," and "get out, leave".
9. Defendant had no chance whatsoever to plead her case against the plaintiff.
10. Judge Daly [sic] told defendant to pursue this Motion in order to get her possessions back from the plaintiff.

*See*, Appellant's "Response to 1925(b) Statement" at ¶¶ 1-10.

In response to the Appellant's Statement of Matters Complained of on Appeal, we respectfully refer the Superior Court to the Transcript of Proceedings from the March 23, 2016 hearing, a copy of which is attached hereto for the convenience of the Superior Court. The transcript speaks for itself regarding the manner in which the hearing at issue transpired. This Court made every effort to hear Appellant's matter, but Appellant constantly interrupted the

---

[6] Subsequent to the March 23, 2016 hearings, we note that Appellant was back before the Court on a Complaint for Indirect Criminal Contempt, filed by Ms. Forcier. Ms. Forcier alleged in the Complaint that Appellant violated the PFA Order entered on February 17, 2016 by sending her text messages through a third party. This Court found Appellant in contempt of Court.

4


Pg 17.

Court and Ms. Forcier, would not answer basic questions, would not stop emoting, and appeared manic. She would not follow simple instructions from the Court to curb her behavior.[7]

We will address Appellant's related claims that she had "no chance whatsoever to plead her case" and that the Court "refused to let (her) state her case," dismissed her case "without cause," and threatened to dismiss her case during the hearing "for no reason." *See Id.* at ¶¶ 2, 4, 7, and 9. We submit that Appellant attempted to circumvent the procedural rules regarding the proper filing of an action of replevin by attempting to seek recovery of her personal property within the confines of a PFA matter. Not only does this violate the Rules of Civil Procedure, but the Court was without the statutory authority to grant Appellant the relief she requested at the time.

Through her request, Appellant was attempting to regain possession of personal property, including furniture, items allegedly found in a storage facility, and other items that were allegedly being held by Ms. Forcier. This was not a situation where the PFA was being granted and the party who was the subject of the PFA requested brief access to the residence to obtain personal items, such as clothing and a toothbrush, before being forced to leave per the PFA Order. The PFA had been in place for several weeks. Thus, Appellant was seeking a replevin action, which is governed by the Pennsylvania Rules of Civil Procedure, 1071 et seq. Rule 1071 provides, "[e]xcept as otherwise provided in this chapter, the procedure in the action of replevin from the commencement to the entry of judgment shall be in accordance with the rules relating to a civil action." Additionally, Rule 1073 instructs, "[a]n action of replevin shall be commenced by filing a complaint with the prothonotary." The Rules further mandate that in this complaint, a plaintiff shall specifically include a description of the property to be replevied,

---

[7] The transcript does not reflect, nor did this Court witness, any mistreatment of Appellant by the deputy sheriff as alleged.

5

Pg 18.

its value, its location and the material facts upon which plaintiff's claim is based. Pa.R.C.P. 1073.1.

Appellant did none of the foregoing with respect to her request for return of personal property. Rather, at the time of her February 17, 2016 hearing on a request for temporary relief under the Protection from Abuse Act, she presented Judge Dally with her handwritten request for an Order to retrieve her personal possessions. As discussed, it was then that Judge Dally issued a Rule to Show Cause why Appellant's request should not be granted.[8]

During the hearing at issue, we advised Appellant that her remedy for obtaining her possessions is to file an action in replevin as it was wholly inappropriate for Appellant to pursue a request for an action in replevin within the confines of a PFA matter. *See*, Notes of Testimony ("N.T.") at 5:9-11. The purpose of the PFA Act is to afford quick and prompt protection and relief to victims of domestic violence. The Superior Court has distinguished this Act from other forms of legal action in that the PFA Act addresses the need for immediate relief. It has been called "a vanguard measure" dealing with the problems of domestic violence. *Snyder v. Snyder*, 629 A.2d 977 (Pa. Super. 1993). *See also Eichenlaub v. Eichenlaub*, 490 A.2d 918 (Pa. Super. 1985) ("The primary goal of the Act was ... advance prevention of physical and sexual abuse ... This purpose is manifest in the emergency provisions of the Act that enable a court to respond quickly and flexibly to advance warnings of abuse") (internal citations and punctuation omitted). Appellant's request for her personal property runs afoul of this general purpose and, further, is not among the relief authorized by law under the PFA statute.

---

[8] In paragraph 10 of her "Response to 1925(b) Statement," Appellant states that Judge Dally instructed her to pursue her motion regarding her possessions. We submit that Judge Dally did not instruct her to do same, but rather, he issued the aforementioned Rule to Show Cause, scheduling a hearing on the Rule for March 23, 2016, the day on which Appellant attempted to pursue her "motion."

6

Pg 19.

23 Pa. C.S.A. 6108, which addresses the relief a court may grant in a PFA matter, states in pertinent part, "The court may grant any protection order or approve any consent agreement *to bring about a cessation of abuse of the plaintiff or minor children*. 23 Pa. C.S.A. 6108 (a) (emphasis added). Thus, Appellant's request for return of her personal property is completely outside the scope of the statutory purpose and mandates of the PFA Act, and this Court was void of authority to enter an Order as requested by Appellant.

Next, Appellant takes issue with this Court's treatment of her, stating that we were "extremely unprofessional." To the contrary, Appellant was persistent in interrupting the Court, preventing the Court from efficiently disposing of the business of the Court. Appellant interrupted the Court no less than four times during the course of the hearing to the extent that we were constrained to warn Appellant that the hearing would be terminated due to the inability to maintain order and decorum during the proceeding.[9] *See*, Notes of Testimony ("N.T.") at 4:16-18; 5:7-11; 6:9-16; 9:1-6. While the attached transcript speaks for itself, the Court was courteous in hearing Appellant state her request, yet at the same time, deliberate with our ruling as her request was inappropriate under a PFA action. *Id.* at 5:7-11.

Finally, it bears mentioning that Appellant has been recognized as being overly litigious and difficult, not only in Northampton County, but also in other counties as illustrated by the remarks of the Lycoming County trial court judge as stated in the Superior Court's Opinion discussed *supra*. Defendant has a history of filing frivolous and incessant appeals and requests. Notably, since 2008, there have been approximately sixteen (16) cases initiated in Northampton County's Civil and/or PFA Divisions involving Appellant. Of particular note, in Northampton County case number C-48-CV-2014-7541, the Honorable Anthony S. Beltrami, Jr. directed the

---

[9]*See* PA ST CJC Rule 2.8, which provides, "A judge shall require order and decorum in proceedings before the court."

Pg 20

Clerk of Court not to accept further *pro se* filings from Appellant because the case had been discontinued. This was done via Order of Court dated 6/8/15.

Because an action in replevin must be properly pleaded under the Rules of Civil Procedure and because same falls outside the confines of the PFA Act, depriving the Court of authority to grant Appellant relief in the PFA action, we maintain that the Order of March 23, 2016 was appropriately entered. Accordingly, Appellant's appeal lacks merit and should be denied.

The Prothonotary is directed to provide notice of the entry of this Order to counsel and any unrepresented parties.

BY THE COURT,

Date: 6/8/16      JENNIFER R. SLETVOLD, Judge

Pg 21.

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY PENNSYLVANIA
CIVIL DIVISION
PROTECTION FROM ABUSE

GRACE FORCIER,
    Plaintiff,

    v.

DAWN BALL,
    Defendant.

No. C-00-PF-2016-091

## MEMORANDUM OPINION

This Memorandum Opinion is filed in accordance with Rule 1925(a) of Pennsylvania Rules of Appellate Procedure.

This matter comes now before the Superior Court of Pennsylvania on appeal of this Court's May 15, 2016 finding of Indirect Criminal Contempt on the part of the Defendant to the instant Protection From Abuse action, Dawn Ball. The Plaintiff petitioned this Court for a temporary PFA on February 9, 2016. A Final PFA was entered by consent against Dawn Ball on February 17, 2016. A Complaint for Indirect Criminal Contempt for Violation of the PFA was filed on March 29, 2016, at which time a Rule to Show Cause was Ordered, along with a Rule Returnable on April 15, 2016.

On April 15, 2016, Plaintiff and Defendant appeared before the undersigned with various Facebook messages and text messages in which the Defendant attempted to contact the Plaintiff via a third party, Jess Gonzales. Thus, this Court found the Defendant, Dawn Ball, in Indirect Criminal Contempt of the February 17, 2016 Final PFA and sentenced her to a suspended sentence of six (6) months confinement in Northampton County Prison, withstanding any further violations and Ordered strict compliance with the PFA.

A Notice of Appeal was received on or about May 12, 2016. A Pennsylvania Rule of Appellate Procedure 1925(b) Statement was filed by this Court in accordance with law on June 9, 2016. Ms. Ball



COPY

Pg 22.    1

filed a Concise Statement of Errors Complained of on Appeal on June 27, 2016, alleging the following, which this Court will address seriatim.

I. **"Dawn Ball was not given sufficient time to view any evidence presented against her. Appellee never attached it to the Complaint, nor was Appellant given sufficient time to view it in Court."**

Pursuant to Section 6113(b)(3) of the Pennsylvania Protection From Abuse Act, the defendant shall not have the right to a jury trial on a charge of indirect criminal contempt but rather a full hearing and opportunity to be heard. Having reviewed the record of the Indirect Criminal Contempt proceedings it is clear that the Defendant, Dawn Ball, was present at a full hearing in which she was given the opportunity to present testimony and cross-examine the Plaintiff regarding the Contempt allegations.

II. **"There were no sufficient grounds to find Appellant in Contempt. Appellant never abused, harassed, stalked, threatened, nor contacted in any way, the Appellee, Grace Forcier, nor any one in the Order. And the Court failed to show how Appellant was found to be in contempt of the PFA Order."**

In regard to the finding of Indirect Criminal Contempt, the law is clear: Where a Protection from Abuse Act (PFA) order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order, and to establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent. 23 Pa.C.S.A. § 6114, *See* Com. v. Jackson, 10 A.3d 341 (Pa. Super. 2010).

The substance of the Final PFA states, in pertinent part:

"Defendant (either directly or indirectly through a third party) shall not contact Plaintiff, or any other person protected under this order, by oral, nonverbal, written or electronic means, including telephone, electronic mail, internet, facsimile, telex, wireless communication or similar transmissions."

Here, the express text of the Final PFA Order was clear: Ms. Ball was to have no contact whatsoever, either directly or indirectly, with her Mother, the Plaintiff, including by means of the internet or similar transmissions. It is also clear that Ms. Ball had notice of the Order, as it was entered by

pg 23.  2

agreement and a copy of the same was served on her in person by this Court at the time the Final PFA was entered. As to the third requirement, that the act be volitional, this Court found that Ms. Ball did inappropriately contact a third party via Facebook concerning the Plaintiff, with the intent of causing the third party to contact the same. Additionally, Ms. Ball admits to publicly posting about her Mother on Facebook, whom she identifies by name in the posts, which this Court finds to be a violation of the explicit parameters of the PFA. As to the fourth requirement, this Court also found that Ms. Ball acted with wrongful intent as she expressed no alternative reason for contacting the third party regarding her Mother other than in retaliation for some family conflict, as evidenced in the transcript.

III. "Per the PFA Order, the Appellant cannot abuse, harass, stalk, threaten, nor contact the Appellee in any way. And by posting the truth about what the Appellee did to the Appellant on Appellant's own Facebook page, it does not violate the PFA in any way. The Appellant never told anyone to contact the Appellee either. And if the Appellee has her friends spy on the Appellant's Facebook page, that's not a violation of the Contempt by the Appellant. The Court can not order the Appellant not to tell her, (Appellant's) friends on Facebook what the Appellee did or what she is like. That in no way violates the order. It is like if the Appellee was writing a book about her life, the Court can not tell her Appellant she can not write in her book about what happened or about the Appellee. Nothing in the Order states that the Appellant can not talk about the Appellee, especially if the Appellant is telling the truth about the Appellee and warning others about her."

Here, this Court simply disagrees. This Court found that Ms. Ball's public postings about the Plaintiff, who she identified by name, were intended to be a means of communication and retaliation, directed at the Plaintiff. Additionally, it was more than reasonably foreseeable that the Plaintiff would see or hear about these posts in which she is publicly addressed and the Court believes that was Ms. Ball's motivation.

IV. "Appellant never took any money from the Appellee. In fact it was the other way around. The Appellee stole over 23,000.00 from the Appellee which can be proven."

Here, the Court believes this statement to be irrelevant to the instant appeal of a finding of Indirect Criminal Contempt as this Court based its decision on the indirect contact and did not consider any allegation of theft.

Pg 24.

3

V.   "When the Appellee did violate the PFA Order Appellant had on her, by debasing the Appellant in a Court Response and uttered complete lies about her, Judge Giordano refused to find her in Contempt though the proof was presented to the Court. And Appellant feels she did not get a fair hearing."

The Court believes Ms. Ball to be referring to this Court's denial of her privately filed Indirect Criminal Contempt Complaint dated May 25, 2016 at Northampton County Docket No. C-48-PF-2016-095. As Ms. Ball's instant appeal is of the finding of Indirect Criminal Contempt at Docket No. C-00-PF-2016-091, we believe this matter to be improperly before the Court at this time.

VI.   "The Court also released Appellant's address to the Appellee though Appellant has PFA on the Appellee as well when Appellant told the Court specifically not to give the Appellee her address."

Here, the undersigned has no control over the release of public records and disputes that he, or any employee of Northampton County, released private or sealed information in this case.

BY THE COURT:

EMIL GIORDANO, J.

P925-    4